LOUTTS v LOUTTS

Docket No. 297427. Submitted March 7, 2012, at Lansing. Decided
    September 20, 2012, at 9:00 a.m. Leave to appeal denied, 493 Mich
    968.

    Georgii B. Loutts was granted a judgment of divorce from Irina V.
        Loutts in the Washtenaw Circuit Court, Family Division, Archie C.
        Brown, J. Defendant appealed, alleging that the court erred when
        it failed to award her attorney and expert fees pursuant to MCR
        3.206(C)(2)(a) and imputed to plaintiff a yearly income of $130,000
        for purposes of determining spousal support. Defendant also
        claimed that the amount of spousal support awarded was insuffi-
        cient, the court erred by imputing to defendant an income of
        $40,000 for purposes of determining spousal support, and the
        court erred by prohibiting her from competing for three years with
        the business that the court awarded to plaintiff in the property
        distribution.

        The Court of Appeals held:

        1. The trial court's failure to address defendant's request for
        attorney and expert fees was, in light of her multiple requests, an
        abuse of discretion. Because defendant sufficiently demonstrated
        her inability to pay, the case must be remanded to the trial court
        for the court to address and decide defendant's request under
        MCR 3.206(C)(2)(a).

        2. The statute governing spousal support, MCL 552.23(1),
        favors a case-by-case approach to determining spousal support.
        Courts must employ a case-by-case approach when determining
        whether "double-dipping," situations where a business or profes-
        sional practice is valued by capitalizing its income, some or all of
        which is also treated as income for spousal support purposes, will
        achieve an outcome that is just and reasonable within the meaning
        of MCL 552.23(1). In this case the trial court determined that the
        value of a business may be used for the purpose of either property
        distribution or spousal support, but not both. The trial court erred
        by applying a bright-line test and failing to consider the specific
        facts and circumstances of the case. The case must be remanded to
        the trial court for a redetermination of spousal support, including
        a determination whether the equities in this case warrant utilizing

the value of the business awarded to plaintiff for purposes of both property division and spousal support.

3. The record supports the trial court's determinations regarding the factors to be considered when determining spousal support. The trial court did not clearly err by determining that neither party was responsible for the support of their adult son and that the parties were equally at fault for the breakdown of the marriage.

4. The trial court's determination that defendant was capable of earning $40,000 annually was purely speculative. The trial court abused its discretion by imputing to defendant an income of $40,000 for the purpose of determining spousal support. Because defendant admits that $34,000 is an appropriate amount of income to impute to her, the matter must be remanded to the trial court for it to recalculate spousal support imputing to defendant an income of $34,000.

5. Because both parties requested the noncompete restriction, the restriction in this case is upheld.

Affirmed in part, reversed in part, and remanded.

DONOFRIO, J., concurring, wrote separately to explain why the noncompete restriction was appropriate and necessary for an equitable distribution in the circumstances of this case. The restriction was equitable and necessary because without it defendant could have received her share of the value of the company and thereafter formed a competing company, thereby adversely affecting the value of plaintiff's property distribution. Considering the facts of this case, the restriction was fair and just and was necessary for an equitable distribution of property. The restriction did not deprive defendant of her ability to earn a living and there was a legitimate concern that the value of plaintiff's property distribution would be destroyed without the restriction. The restriction was reasonable with regard to its duration and geographical scope. It was not overbroad and was appropriately narrowly tailored to protect plaintiff's property distribution.

DIVORCE — SPOUSAL SUPPORT.

The statute governing spousal support awards favors a case-by-case approach to determining spousal support and does not provide a strict formula to be followed; a trial court's decision to award spousal support is a discretionary decision that should reflect what is just and reasonable under the circumstances of the case; the parties are entitled to individual consideration based on the law and facts applicable to their case (MCL 552.23[1]).

*Kline Legal Group, PLC* (by *John K. Kline* and *Elizabeth A. Kitchen*), for plaintiff.

*Faupel, Fraser & Fessler* (by *Marian L. Faupel* and *James Fraser*) for defendant.

Before: RONAYNE KRAUSE, P.J., and DONOFRIO and FORT HOOD, JJ.

PER CURIAM. Defendant appeals as of right a judgment of divorce following a bench trial. Because the trial court failed to address defendant's request for attorney and expert fees pursuant to MCR 3.206(C)(2)(a), erred by determining as a matter of law that the value of a business cannot be used for purposes of both property division and spousal support, abused its discretion by imputing to defendant an income of $40,000 for the purpose of determining spousal support, appropriately imposed a restriction prohibiting defendant from competing with the business that the trial court awarded to plaintiff in the property distribution, and made findings regarding fault and whether defendant was responsible for the support of their adult son that were not clearly erroneous, we affirm in part, reverse in part, and remand for further proceedings.

## I. ATTORNEY AND EXPERT FEES

Defendant first argues that the trial court erred when it failed to award her attorney and expert fees pursuant to MCR 3.206(C)(2)(a). "Generally, an issue is not properly preserved if it is not raised before, addressed, *or* decided by the circuit court or administrative tribunal" and need not be addressed if first raised on appeal. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005) (emphasis added). We would have appreciated it if the trial court had ad-

dressed this issue,[1] but because it was raised there and is now being pursued on appeal, it is preserved for our review. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

We review a trial court's decision whether to award attorney fees for an abuse of discretion, the trial court's findings of fact for clear error, and any questions of law de novo. *Myland v Myland*, 290 Mich App 691, 701-702; 804 NW2d 124 (2010). However, " 'failure to exercise discretion when called on to do so constitutes an abdication and hence an abuse of discretion.' " *Rieth v Keeler*, 230 Mich App 346, 348; 583 NW2d 552 (1998), quoting *People v Stafford*, 434 Mich 125, 134 n 4; 450 NW2d 559 (1990).

MCR 3.206(C)(2)(a) provides:

> A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay . . . .

"This Court has interpreted this rule to require an award of attorney fees in a divorce action 'only as necessary to enable a party to prosecute or defend a suit.' " *Myland*, 290 Mich App at 702, quoting *Gates v Gates*, 256 Mich App 420, 438; 664 NW2d 231 (2003). "[A] party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees." *Myland*, 290 Mich App at 702.

The trial court's failure to address defendant's request for attorney and expert fees under MCR 3.206(C)(2)(a) in

---

[1] Although the trial court addressed the parties' requests for attorney fees and sanctions premised on the other party's alleged wrongful conduct, the court did not address defendant's request for attorney and expert fees pursuant to MCR 3.206(C)(2)(a).

light of her multiple requests was an abuse of discretion. In *Myland*, 290 Mich App at 703, this Court held that the trial court erred as a matter of law by failing to consider "whether attorney fees were necessary for plaintiff to defend her suit, including whether, under the circumstances, plaintiff would have to invade the same spousal support assets she is relying on to live in order to pay her attorney fees and whether, under the specific circumstances, defendant has the ability to pay or contribute to plaintiff's fees." The trial court in the instant case similarly erred. The court failed to address defendant's request under MCR 3.206(C)(2)(a) by considering her ability to pay her fees relative to plaintiff's ability to pay. Moreover, defendant contends that her attorney fees alone total over $62,000, which is more than the amount of income that the trial court erroneously imputed to her.[2] Thus, she sufficiently demonstrated her inability to pay. *Myland*, 290 Mich App at 702. We therefore remand this case to the trial court for the court to address and decide defendant's request for attorney and expert fees under MCR 3.206(C)(2)(a).

## II. SPOUSAL SUPPORT

Defendant next argues that the trial court erred by imputing to plaintiff a yearly income of $130,000 for the purpose of determining spousal support. It is within the trial court's discretion to award spousal support, and we review a spousal support award for an abuse of discretion. *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010); *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). We also review for an abuse of discretion a trial court's decision whether to impute

---

[2] As discussed later in this opinion, the trial court abused its discretion by imputing to defendant a yearly income of $40,000.

income to a party. *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Woodington*, 288 Mich App at 355. "The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Berger*, 277 Mich App at 726. We review for clear error the trial court's factual findings regarding spousal support. *Id.* at 727. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made. *Woodington*, 288 Mich App at 355. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. *Berger*, 277 Mich App at 727. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. *Id.*

Defendant contends that the trial court erred by imputing to plaintiff a yearly income of $130,000 for the purpose of calculating spousal support instead of basing the calculation on plaintiff's $240,000 yearly salary from QPhotonics, LLC, a company that plaintiff formed in 2000 and at which he began working full time in 2004. Plaintiff, on the other hand, argues that the trial court's decision to base spousal support on the lesser amount was appropriate to avoid a "double-dip" because the court awarded defendant one-half of the value of QPhotonics when it divided the parties' marital assets.

" 'Double dipping'—or 'tapping the same dollars twice'—refers to situations where a business or professional practice is valued by capitalizing its income, some or all of which is also treated as income for spousal

support purposes." Cunningham, *"Double dipping" re-visited: Food for thought,* 27 Mich Fam L J, p 6 (January 1999).

> When the main value of a business (such as a service business or professional practice) is goodwill derived from its ability to generate future income, the appraisal typically involves determining the reasonable compensation of the owner, that is, what the owner would earn working for someone else if he or she did not own the business. The extra income (sometimes called excess compensation) earned over and above that reasonable compensation represents the investment return of the business and is an important element in the value of the business. To the extent that a nonowner spouse shares in excess compensation that was rolled into the value of the business, some practitioners argue that this same income should be excluded from consideration in support calculations because to include it would amount to a double dip by awarding a share of that excess compensation as part of the property division, and then another share of the same income stream as part of a support award. [2 Kelly, Curtis & Roane, Michigan Family Law (7th ed) (ICLE, 2011), § 15.40, p 15-46.]

In this case, the trial court determined that the value of QPhotonics was $280,000. The court awarded the company to plaintiff and awarded defendant $140,000, or one-half of the value of the company. The trial court then addressed spousal support, stating, in relevant part:

> [T]he critical issue for the Court is what income will be used by the parties in calculating support. The issue is whether -- and the primary issue here is what the Court has deemed and has been referred to as the double-dip. The issue is whether the plaintiff's share of the business future profits, that being the value of the company, in this case, the $280,000, can be used for both division of the marital assets, as the Court has now just done, and for calculation of spousal support.

\* \* \*

The Court has been cited to, has read and agrees with plaintiff's argument that the holding of the court in Heller v Heller [2008-Ohio-3296 (Ohio App, 2008) (*Heller I*)], a 2008 case, that that rationale, that awarding part of the same asset twice, results in an unequal property division. So, for purpose of the record, the Court in Heller determined this double-dipping in the context of spousal support and talks in part about -- and distinguishes the issue of pensions, which I believe should be distinguished, but then goes on to talk about that the Heller case used the capitalization of earnings method, that which was used in this case, in determining the value of the S corporation, again, like QPhotonics, at issue in this case, which the court indicated effectively and appropriately kept the concepts of defendant's salary and ownership profits separately.

\* \* \*

I believe the court in Heller, which our Court of Appeals, for whatever reason, has, at least at this point, failed to undertake, clearly identifies what the issue is, and for purposes of fairness and being equitable, identifies that the determination of whether or not the valuation of the business is either for purpose of distribution of property or spousal support and not both. In this case, given that it's been for business purpose, for the utilization of that amount, then, for purpose of spousal support, at least short-term, if not for the entirety of spousal support, would be unfair.

Therefore, this Court determines that the income of the plaintiff to be utilized for calculating spousal support purposes is $130,000.[3]

This Court has previously addressed double-dipping in the context of pensions. In *McCallister v McCallister*, 205 Mich App 84; 517 NW2d 268 (1994), the trial court awarded the defendant wife a portion of the value of the

---

[3] This figure is consistent with the testimony of plaintiff's expert, Gary Rogow, who testified that $130,000 is the fair market value of plaintiff's compensation.

plaintiff husband's pension when it divided the couple's marital assets. The court awarded the plaintiff the pension plan itself, free of any claim of interest by the defendant. *Id.* at 89 (REILLY, P.J., concurring). After the plaintiff retired and began collecting pension benefits, he sought to modify his spousal support obligation, arguing that it was improper to consider his retirement income, derived from the pension plan awarded to him in the divorce judgment, when determining his ability to pay spousal support. *Id.* at 86. This Court disagreed and determined that MCL 552.23[4] and MCL 552.28 require courts to consider "*all* the circumstances of the case" "and empower courts to award [spousal support] out of the property of the former spouse when circumstances warrant it." *Id.* at 87-88; see also *Stoltman v Stoltman*, 170 Mich App 653, 658; 429 NW2d 220 (1988) ("[w]hether to terminate alimony upon the retirement of the party obligated to pay alimony when a pension has been awarded to the obligor should be decided on a case-by-case basis.").

As discussed in *McCallister*, Michigan's statute governing spousal support favors a case-by-case approach to determining spousal support. MCL 552.23(1) provides:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reason-

---

[4] Although the *McCallister* Court recited the correct language, it erroneously cited MCL 522.23 instead of MCL 552.23. *McCallister*, 205 Mich App at 87.

able, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

Thus, a trial court's decision to award spousal support is discretionary and should reflect "what is 'just and reasonable under the circumstances of the case.' " *Myland*, 290 Mich App at 695, quoting *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). "[P]arties to a divorce action are entitled to individual consideration based on the law and facts applicable to their case . . . ." *Myland*, 290 Mich App at 697 (quotation marks and citation omitted). Spousal support does not follow a strict formula. Indeed, "given the statutory mandate of MCL 552.23 . . . there is no room for the application of any rigid and arbitrary formulas when determining the appropriate amount of spousal support . . . ." *Id.* at 699-700. Accordingly, we decline to adopt a bright-line rule with respect to "excess" income and hold that courts must employ a case-by-case approach when determining whether "double-dipping" will achieve an outcome that is just and reasonable within the meaning of MCL 552.23(1).[5]

---

[5] In addition, we note that the trial court's reliance on *Heller* was misplaced. In a subsequent appeal in *Heller*, the appellate court stated that its determination that a double-dip was inequitable was based on the facts of that case alone and was not a determination that double-dipping is never permissible:

In the first appeal, there was no language in our decision to suggest that this court intended to promulgate a flat prohibition against double dipping applicable to every income-producing asset; rather, this court addressed the "double dip" issue only as it applies to the facts of this case. [*Heller v Heller*, 2010-Ohio-6124, ¶ 8 (Ohio App, 2010) (*Heller II*).]

Moreover, the *Heller I* court's determination that double-dipping was inappropriate was based in part on the defendant's argument that the double-dip resulted in a violation of an Ohio statute requiring that the division of marital property be "equal" or that the court make specific

In this case, the trial court, relying on *Heller I*, determined that the value of a business may be used for the purpose of *either* property distribution *or* spousal support, but not both. For the reasons discussed, the trial court erred by applying a bright-line test and failing to consider the specific facts and circumstances of this case. Accordingly, we direct the trial court to redetermine spousal support on remand, including whether the equities in this case warrant utilizing the value of QPhotonics for purposes of both property division and spousal support.

Defendant also argues that the trial court's spousal support award of $1,510 a month for four years was insufficient. Specifically, she contends that that amount was inappropriate considering that the parties were married for 21¹/₂ years, their income disparity was significant, she was responsible for supporting the parties' adult son, and plaintiff was at fault for the breakdown of the marriage. In deciding whether to award spousal support, the trial court should consider several factors, including

"(1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity." [*Myland*, 290 Mich App at 695, quoting *Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

findings of fact supporting an unequal division of property. *Heller I*, 2008-Ohio-3296, ¶¶ 6-7. This requirement is not present in Michigan law.

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). The primary purpose of spousal support is to balance the parties' incomes and needs so that neither party will be impoverished, and spousal support must be based on what is just and reasonable considering the circumstances of the case. *Id.*

The record supports the trial court's factual findings regarding the spousal support factors. In particular, no evidence indicated that the parties' adult son, Andrei, was unable to work because of mental and physical health issues, as defendant maintained. Although defendant observed Andrei walking with a cane on one occasion, no evidence was presented of any restriction on his ability to work. The trial court considered the conflicting testimony regarding Andrei, noted the differences in the testimony, and indicated how it reached its decision. The court's determination that neither party was responsible for supporting Andrei was not clearly erroneous.

In addition, the trial court's determination that the parties were equally at fault for the breakdown of the marriage was not clearly erroneous. The trial court correctly noted that the fact that defendant obtained a personal protection order against plaintiff did not "automatically import a finding of domestic violence." In fact, the trial court acknowledged that the first domestic violence charge against plaintiff was dismissed and plaintiff was acquitted of the second charge. Defendant also argues that plaintiff repeatedly moved the family from state to state and out of the country. As the trial court noted, however, even if defendant was not in favor of the moves, she nevertheless participated in them and remained in the marriage. The majority of defendant's

argument amounts to frustration that the trial court viewed and weighed the evidence differently than she did. That does not, however, make the court's determinations erroneous. Because the record supports the trial court's factual determination regarding fault, it was not clearly erroneous.

Defendant further argues that the trial court erred by imputing to her an income of $40,000 for the purpose of determining spousal support. There is no question that defendant has the education and skills to find employment. It is equally clear from the record, however, that she has a minimal employment history, with almost no work in the field of her degree. The trial court relied on the testimony of Robert Ancell, an expert witness offered by plaintiff, in determining the amount of income to impute to defendant. Ancell testified that he researched higher education job postings in the United States and discovered 102 job postings in defendant's field of political science. Ancell further testified that a Villanova University job posting was seeking someone with special expertise in Russian affairs. The trial court relied heavily on Ancell's testimony and opined that the Villanova job "appeared to be almost made for" defendant. The Villanova job posting, however, did not indicate a salary, and none of the "available" jobs about which Ancell testified was located in Michigan. In fact, no evidence was presented of a specific job for which defendant was qualified that paid at least $40,000 a year. Moreover, Ancell testified that a personal interview with defendant would be necessary to determine whether she was a suitable match for a particular job. Defendant denied that she would be able to earn $40,000 right away and testified that she might have to work part time or as an adjunct professor making $10,000 to $15,000 a year before she would be able to find full-time employment.

Given this evidence, the trial court's determination that defendant was capable of earning $40,000 annually was purely speculative. Accordingly, the trial court abused its discretion by imputing to defendant an income of $40,000 for the purpose of determining spousal support. See *Carlson*, 293 Mich App at 205. Defendant argues that the trial court erred by imputing to her an income greater than $34,000, which is the amount that she argued in the trial court could properly be imputed to her. Because defendant admits that $34,000 is an appropriate amount of income to impute to her, we direct the trial court on remand to recalculate spousal support, imputing to defendant an income of $34,000.[6]

### III. NONCOMPETE RESTRICTION

Defendant next argues that the trial court erred by prohibiting her from competing with QPhotonics for a period of three years. The judgment of divorce provided:

**RESTRAINING ORDER ON DEFENDANT'S AC-TIONS FOR 3 YEARS**

The Court orders that Defendant, Irina V. Loutts, shall [be] restrained from the following actions or conduct for three years from the date of the entry of this Judgment, under penalties of contempt of Court for any violations:

(1) Defendant shall not communicate with QPhotonics, LLC's employees or hire any of QPhotonics, LLC's employees;

(2) Defendant shall not engage in or obtain a website that will sell the same or similar products as QPhotonics, LLC.[;]

---

[6] We note that although the trial court awarded defendant spousal support retroactive to the court's earlier temporary support order, defendant does not challenge the retroactivity of the award.

(3) Defendant shall not communicate with QPhotonics, LLC's Suppliers or Customers;

(4) Defendant shall not in anyway [sic] compete with QPhotonics, LLC. in regards to the following products / items:

Laser diodes; Superluminescent diodes; light emitting diodes; semiconductor optical amplifiers; Photodiodes; Laser Diode Controllers; Temperature controls for laser diodes; Laser diode mounts, wafers and / or chips.

Such Restraining Order shall be in all International Markets and not limited to the U.S.A. market.

Defendant argues that this prohibition contravenes the general public policy against the restraint of trade and is overbroad.

A court possesses inherent authority to enforce its own directives. A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case; once a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy. [*Draggoo v Draggoo*, 223 Mich App 415, 428; 566 NW2d 642 (1997) (quotation marks and citations omitted).]

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates*, 256 Mich App at 423. Factors to consider when dividing marital property include "general principles of equity." *Sparks v Sparks*, 440 Mich 141, 160; 485 NW2d 893 (1992). A trial court's disposition in a divorce action must be "fair and just." *Id.* at 150. We will not reverse a trial court's dispositional ruling unless we are left with a firm conviction that the property division was inequitable. *Gates*, 256 Mich App at 423.

Under these facts, we would uphold the noncompete restriction on the sole basis that both parties requested

it. It is unfair to harbor error and use it as an appellate parachute. Again because both parties made the request, to be awarded the same company and issue a noncompete restriction against the other spouse, we uphold the noncompete restriction in this case.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction. Neither party having prevailed in full, we decline to award costs pursuant to MCR 7.219.

RONAYNE KRAUSE, P.J., and FORT HOOD, J., concurred.

DONOFRIO, J. (*concurring*). I concur in the majority opinion affirming in part, reversing in part, and remanding this case for further proceedings. I write separately to explain why the noncompete restriction was necessary for an equitable property distribution in the circumstances of this case.

The provision in the judgment of divorce prohibiting defendant from competing with QPhotonics, LLC, was part and parcel of the trial court's awarding defendant one-half of the value of the company. The restriction was equitable because without it defendant could have received her share of the value of QPhotonics and thereafter formed a company to compete with QPhotonics, thereby adversely affecting the value of plaintiff's property distribution. In fact, the record shows that the noncompete restriction was necessary. Defendant testified that while she had no plans to start a business that competed with QPhotonics, she did plan to start a "complementary" business that uses certain diodes or other products that QPhotonics sells. Defendant further testified that she had already traveled to Russia to meet with two suppliers regarding her business plan. The trial court appropriately

determined that "the line between what is a competing business versus a complementary business is blurred at best[,]" and that, accordingly, "plaintiff is entitled to some form of protection from a business competing with QPhotonics . . . ." The trial court expressed concern that defendant could receive her one-half share of the value of QPhotonics and then create a competing business that would reduce the value of the company and dilute plaintiff's property distribution. Moreover, the record shows that defendant had the ability to compete directly with QPhotonics. Defendant's father was an expert in the area of fiber optics and two of his former students are also experts in the field and work at Wayne State University. Defendant also testified that she has two friends who are physicists and work for the University of Michigan, one of whom had volunteered to assist defendant. Therefore, considering the facts of this case, the noncompete restriction was fair and just and was necessary for an equitable distribution of property.

This case does not present a scenario involving like professionals engaged in a service-oriented business. For example, if two doctors married, formed a medical practice specializing in one area of medicine, and then divorced, a noncompete restriction prohibiting one of the doctors from competing with the other would deprive that person of his or her ability to earn a living. That is not the situation presented in this case where plaintiff formed QPhotonics and operated the business. Unlike plaintiff, defendant was not educated in physics and worked for the business only in the capacity of an accountant or bookkeeper. Notwithstanding defendant's lack of education and training in physics, she nevertheless had the ability to compete directly with QPhotonics, as previously discussed, considering that her father and acquaintances worked in the field and

were able to assist her. Moreover, defendant indicated her intent to form her own business in the industry. Thus, the facts of this case presented a situation where a noncompete restriction did not deprive defendant of her ability to earn a living and there was a legitimate concern that the value of plaintiff's property distribution would be destroyed without the restriction.

Further, the noncompete restriction was reasonable. In an analogous situation, MCL 445.774a(1) "explicitly permits reasonable noncompetition agreements between employers and employees." *Bristol Window & Door, Inc v Hoogenstyn*, 250 Mich App 478, 494; 650 NW2d 670 (2002). That statute provides:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is *reasonable as to its duration, geographical area, and the type of employment or line of business*. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited. [Emphasis added.]

"Thus, a restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable." *St Clair Med, PC v Borgiel*, 270 Mich App 260, 266; 715 NW2d 914 (2006).

Here, the duration of the restriction is reasonable. The restriction was implemented on the date that the trial court entered the judgment of divorce and will be in effect for three years. Thus, it will expire on March 9, 2013. In *Follmer, Rudzewicz & Co, PC v Kosco*, 420

Mich 394, 398 n 1; 362 NW2d 676 (1984), and its companion case, *Nolta-Quail-Sauer & Assoc v Roche*, our Supreme Court upheld noncompete agreements lasting three and five years, respectively. In addition, this Court has upheld an agreement requiring no contact or solicitation for a period of two years. *Rehmann, Robson & Co v McMahan*, 187 Mich App 36, 41-42; 466 NW2d 325 (1991). Under the circumstances of this case, three years is not an unreasonable length for the duration of the restriction.

The geographical area of the restriction is also reasonable. QPhotonics is an Internet business that conducts the majority of its business in the global market through its website and delivers products worldwide. Thus, the restriction appropriately prohibits defendant from competing with QPhotonics in the global market. See *Superior Consulting Co, Inc v Walling*, 851 F Supp 839, 847 (ED Mich, 1994) (an unlimited geographic scope of a restrictive covenant is reasonable if the employer operates on a worldwide basis).

Further, the noncompete restriction is not unreasonable with respect to the type of employment or line of business. The restriction is not overbroad. It neither prevents defendant from working with all lasers in any manner nor does it prevent her from starting a complimentary business. The trial court did not decide what a complementary business, as opposed to a competing business, would entail and left that issue to be decided at a later time, if necessary. In addition, the prohibition against speaking to or hiring QPhotonics employees is limited because, other than plaintiff, there are only three QPhotonics employees, a bookkeeper and two test engineers. The prohibition against communicating with QPhotonics's suppliers and customers is also reasonable. Moreover, the restriction is limited to specific laser

items and components, and plaintiff testified that he had no objection to defendant's selling systems that include the component parts that QPhotonics sells. Rather, he maintained that defendant should not be permitted to sell the same components and thus directly compete with QPhotonics. Accordingly, nothing in the restriction prevents defendant from working with lasers, working as a bookkeeper at a company that works with lasers, or utilizing whatever knowledge she has of lasers to manufacture and sell systems that incorporate laser components. Therefore, the noncompete restriction is not overbroad and is narrowly tailored to protect plaintiff's property distribution. Because the imposition of the restriction was within the trial court's equitable authority and was necessary to an equitable property distribution considering the particular facts of this case, I would uphold the restriction on those grounds.