*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AARON ANTHONY RADLINSKI,

Plaintiff-Appellant,

v

JILL CHRISTINE PUTT,

Defendant-Appellee.

UNPUBLISHED
March 17, 2025
3:10 PM

No. 371608
Bay Circuit Court
LC No. 2023-007019-DM

Before: GADOLA, C.J., and CAMERON and ACKERMAN, JJ.

PER CURIAM.

This appeal involves a post-divorce dispute over child custody, property division, and spousal support. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

The parties married in 2002 and had one child, EPR. During their 21-year marriage, plaintiff served as an officer in the United States Army and National Guard for 22 years before retiring. After his retirement, plaintiff worked for Amazon as an operations manager. He eventually left that job and at the time of the divorce trial was employed as a program manager at the Defense Logistics Agency in Battle Creek. Because the parties lived in Bay City, plaintiff's commute to his employment in Battle Creek was over two hours in each direction. In addition to his employment income, plaintiff received Veterans Administration (VA) disability benefits and retirement funds from his military service. Defendant, meanwhile, maintained employment as a physical therapist.

During their marriage, plaintiff rented two apartments—one in Ypsilanti, and one in Bay City—which he did not disclose to defendant. Shortly before trial, plaintiff secretly purchased a house in Bay City in which he intended to live after the divorce. Plaintiff also admitted to having multiple extramarital affairs, and to using the website Ashley Madison, which advertises: "Life is short. Have an affair."

Shortly after plaintiff filed for divorce, the trial court entered a temporary order enjoining the parties from significantly depleting their marital funds. The case proceeded to trial, after which

the trial court granted the parties joint legal custody of EPR, and granting defendant primary physical custody. The trial court also divided the parties' marital property. In the division, plaintiff was responsible for the parties' two outstanding home-improvement loans and was required to pay for the Survivor Benefits Program (SBP), which allowed defendant to receive a portion of plaintiff's military retired pay if plaintiff predeceased defendant. The trial court awarded defendant the parties' marital home, two of their vehicles, her personal checking and savings account, her personal retirement accounts, and half of plaintiff's military pension that accumulated during the parties' marriage. Defendant was responsible for the marital property's mortgage and her student loan debt. The trial court also awarded defendant $1,500 a month in spousal support for eight years.

## II. CUSTODY

Plaintiff first argues that the trial court erred by awarding defendant primary physical custody of EPR because it misapplied several best-interest factors. We disagree.

### A. STANDARD OF REVIEW

When reviewing trial court orders in child-custody disputes, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; see also *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020). We also review the trial court's factual findings "under the great-weight-of-the-evidence standard[.]" *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. "Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion." *Brown*, 332 Mich App at 8. An abuse of discretion exists when the trial court's decision is "palpably and grossly violative of fact and logic." *Id*. (quotation marks and citation omitted). "This Court reviews the trial court's determination regarding a child's best interests for clear error." *Id*. at 8-9. "This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments." *Id*. at 9.

This issue also involves questions of statutory interpretation, which we review de novo. *McGregor v Jones*, 346 Mich App 97, 100; 11 NW3d 597 (2023).

> This Court's primary task in construing a statute is to discern and give effect to the intent of the Legislature. The words used by the Legislature in writing a statute provide us with the most reliable evidence of the Legislature's intent. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. When determining the plain meaning, this Court examines the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme. [*Id*. at 100-101 (quotation marks, alterations, and citations omitted).]

## B. LAW AND ANALYSIS

"A trial court must consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved." *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020). MCL 722.23 states:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(*i*) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

-3-

"[E]ven though each of the factors might not be relevant to the issue, MCL 722.23 requires consideration of 'all' the factors," and a trial court "must at least make explicit factual findings with regard to the applicability of each factor." *Pierron v Pierron*, 486 Mich 81, 91; 782 NW2d 480 (2010) (quotation marks, italics, and citation omitted). If a particular factor is not relevant to the case at hand, then the trial court "need merely state that conclusion on the record." *Id*.

In its opinion and order, the trial court found that the parties were equal with respect to all of the best-interest factors except for Factors (d), (e), (f), and (h), which it found favored defendant. Plaintiff challenges only Factors (d), (e), and (f) on appeal.

## 1. FACTOR (D)

Factor (d) addresses "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). "Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015).

The trial court reasoned this factor favored defendant:

> [Defendant] resides in the marital home, where the family lived for over four years. This is the home in which [EPR] is most familiar. [Defendant] has no immediate plans to move from her current residence.

> [Plaintiff] has purchased a home near [defendant's] home, although at the time of trial he had not moved into the home. Given [EPR's] age, it is anticipated that she will adapt rather quickly to [plaintiff's] new home. The close proximity to [defendant's] home will also allow the parties to keep [EPR] in the same school district, thus providing consistency and stability for the child. [Plaintiff's] current employment is relatively new; as such, it remains to be seen if his current living arrangement will stand the test of time given the long distance he must travel.

According to plaintiff, the trial court erred in its analysis of Factor (d) because it did not "explicitly address the parties' family unit." The question of the "parties' family unit" is simply not an issue under the plain language of MCL 722.23(d). The trial court therefore did not err in not addressing the parties' family unit in its analysis under Factor (d).

Plaintiff also contends that the trial court erred by inappropriately considering the fact that he had purchased a new home. But Factor (d) explicitly directs courts to consider the "continuity" of a child's home environment. The trial court correctly concluded this factor favored defendant because defendant planned to stay in EPR's current home, while plaintiff's new home would disrupt the continuity of EPR's living arrangement.

## 2. FACTOR (E)

Factor (e) concerns "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). In assessing this factor, courts should focus on the

permanence of the custodial unit, rather than its acceptability. See *Ireland v Smith*, 451 Mich 457, 464; 547 NW2d 686 (1996).

The trial court reasoned this factor favored defendant, stating:

> As previously stated, [defendant] resides in the marital home—the only home known to [EPR]. The home is comfortable and suitable for [EPR]. There is no indication that [defendant] will change her residency any time soon, as she is trying to refinance the mortgage/note to keep the home. At the time of trial there was no one else residing in the home and [defendant] was not involved with anyone.
>
> [Plaintiff] purchased a home very near [defendant's] to allow [EPR] to be physically close to both parents. However, at the time of trial [plaintiff] had not yet moved into this home, nor had [EPR] been introduced to the home. Additionally, [plaintiff] testified that he also had an apartment on the west side of the State, presumably to be nearer to his work in Battle Creek. This is clearly an indication that there will be times when [plaintiff] will not return to Bay City but instead will stay over in his apartment on the west side of the State.

The trial court's finding that plaintiff had an apartment near Battle Creek was a clear error. While plaintiff testified to having earlier apartments in Ypsilanti and Bay City, there was no evidence plaintiff acquired an apartment near Battle Creek. Nevertheless, the trial court did not ultimately abuse its discretion in concluding this factor favored defendant. Plaintiff testified that he had an over two-hour commute to his employment in Battle Creek in either direction. Notwithstanding this lengthy commute, defendant believed that he would be able to drop EPR off in the morning and return in time to pick her up from after-school care. Again, a trial court abuses its discretion under the best-interest factors where its decision is "palpably and grossly violative of fact and logic." *Brown*, 332 Mich App at 8 (quotation marks and citation omitted). While the statement about the apartment near Battle Creek was incorrect, the premise of the trial court's conclusion was plaintiff's four-hour daily commute and his work hours would make it difficult for plaintiff to maintain permanency in his new home. We conclude that this decision was not against the great weight of the evidence.

3. FACTOR (F)

Factor (f) looks to "[t]he moral fitness of the parties involved." MCL 722.23(f). Our Supreme Court has directed how courts should analyze this factor:

> Factor f (moral fitness), like all the other statutory factors, relates to a person's fitness *as a parent*. To evaluate parental fitness, courts must look to the parent-child relationship and the effect that the conduct at issue will have on that relationship. Thus, the question under factor f is *not* "who is the morally superior adult;" the question concerns the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct. We hold that in making that finding, questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how

-5-

one will function *as a parent*. [*Fletcher v Fletcher*, 447 Mich 871, 886-887; 526 NW2d 889 (1994).]

The Court went on to note that "[e]xtramarital relations are not necessarily a reliable indicator of how one will function within the parent-child relationship." *Id*. at 887.

Here, the trial court reasoned Factor (f) favored defendant:

Neither parent has a criminal history and there has been no CPS involvement with this family. There were no allegations from Plaintiff regarding Defendant and her moral fitness.

However, the same cannot be said for Plaintiff. It was undisputed that Plaintiff had frequented a website promoting one to engage in "affairs[."] Also undisputed is that Plaintiff was in fact unfaithful to Defendant. While Plaintiff made certain admissions, the Court did not find all of his testimony on this particular issue forthright and credible. Additionally, Plaintiff engaged in a pattern of secrecy and deceit throughout the marriage, i.e. secret apartments, purchase of a house with marital funds and no discussion with Defendant, hiding his military disability determination and payment. All these situations and behaviors go to Plaintiff's moral character and do not reflect positively on him.

The trial court's factual conclusions regarding this factor are not clearly erroneous because each of these facts is supported in the record via testimony or evidence. However, the trial court nevertheless erred in finding Factor (f) favored defendant. The record shows that plaintiff was a loving and appropriate father. Indeed, defendant herself testified that plaintiff had a good relationship with EPR and that she had no concerns about her in his care. Because there was no evidence that defendant's conduct negatively affected the parent-child relationship, the trial court abused its discretion when it concluded this factor favored defendant.

"[U]pon a finding of error, appellate courts should remand to the trial court unless the error was harmless." *Fletcher*, 447 Mich at 882. The trial court's decision was based on findings that best-interest Factors (d), (e), (f), and (h) favored defendant, and all other factors were either equal or inapplicable. Again, the trial court correctly determined Factors (d) and (e) favored defendant, and plaintiff does not challenge trial court's finding as to Factor (h). Although the trial court erred in finding Factor (f) favored defendant, this error was ultimately harmless because several factors favored defendant.

### III. DIVISION OF MARITAL PROPERTY

Plaintiff next argues that the trial court's division of marital property was unfair and inequitable. We disagree.

### A. STANDARD OF REVIEW

"This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64

(2003). "A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). "If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). Given that a trial court's "dispositional ruling is an exercise of discretion[,]" it "should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable." *Id*. at 152.

## B. LAW AND ANALYSIS

Trial courts must "include a determination of the property rights of the parties in the judgment of divorce." *Olson*, 256 Mich App at 627. "The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). "The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Id*. at 717. There are several "factors [which] are to be considered wherever they are relevant to the circumstances of the particular case[.]" *Sparks*, 440 Mich at 159. These include:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Id*. at 159-160.]

Courts may also consider factors other than those listed above; "[t]he determination of relevant factors will vary depending on the facts and circumstances of the case." *Elahham v Al-Jabban*, 319 Mich App 112, 121; 899 NW2d 768 (2017) (quotation marks and citation omitted). Although the trial court is required to consider "all relevant factors," it may not give "disproportionate weight to any one circumstance." *Id*. at 122 (quotation marks and citation omitted). A trial court's findings of fact should be sufficient to support meaningful appellate review. See, e.g., *Koy v Koy*, 274 Mich App 653, 660; 735 NW2d 665 (2007).

The trial court provided the following justification of its property-division award:

> The Family Division of Circuit Court is a court of equity. As such, the Court may consider the parties' behavior both during the marriage, as well as post filing of the divorce. Plaintiff indicated that he was seeking other employment while with Amazon because he needed a change, "it wasn't sustainable." He also stated that it would allow him to make parenting time work better for him. It appears that this was done in anticipation of his filing for divorce. His hours and travel required with his Amazon job were also noted as reasons for the change in employment. The Court, however, finds that to be disingenuous, given the fact that his new job with the Department of Defense is now centered in Battle Creek, which is approximately 45 miles longer in distance and perhaps more in drive time than when he worked for Amazon. Plaintiff testified that he could work remotely two days a week but would be required to be in the office the other three days. He

further testified that his employer indicated that they would be flexible and that he would be able to drive home on the evenings that he would have [EPR] in his care. However, no evidence of this "flexibility" from his employer was presented at trial other than Plaintiff's testimony. His schedule requires him to be at his office in Battle Creek from 7:00 a.m. to 3:30 p.m. three days a week. The Court fails to see how this would work with over a two-hour drive added to the front and back end of those hours.

While the Court does not endorse the fact that Plaintiff voluntarily left employment thereby reducing his income by $30,000 per year, and walked away from over $40,000 worth of stock options, in light of the fact that he no longer has possession of this stock, the Court did not place full value for this otherwise marital asset. However, his failure to divulge his VA Disability pay for an extended period of time, depositing such into an account solely in his name, a secret apartment in Ypsilanti, Bay City, and Battle Creek, the purchase of a house utilizing funds from a marital account, all without consulting his wife, and in more than one instance, in violation of the Temporary Restraining Order entered in this matter, the Court finds that it is fair and equitable to assign a partial value and in doing so, level out the assets and debt between the parties without additional offset.

Plaintiff argues on appeal that the trial court abused its discretion by awarding defendant: (1) the entire marital home with no offset; (2) 50% of plaintiff's military pension; and (3) a share of the parties' retirement accounts. Plaintiff asserts that the trial court added to the disproportionate division of marital property by obligating him to be responsible for two home-improvement loans and a lesser share of the parties' retirement accounts. Plaintiff opines that the lopsided division of assets reflects the trial court's intent to punish him for leaving his higher paying job at Amazon.

The first step in our analysis is determining whether the trial court clearly erred in its findings of fact. *Olson*, 256 Mich App at 622. As discussed, we have concluded that the trial court erred in finding plaintiff held an apartment near Battle Creek, but its other findings are supported by the record.

The second step is to consider "whether the dispositive ruling was fair and equitable in light of those facts." *Sparks*, 440 Mich at 152. Plaintiff argues on appeal that the award was inequitable because his award of assets was much lower while his award of debts was much higher. We agree that the award substantially favored defendant. Yet, plaintiff completely fails to explain how the trial court erred in its analysis of the factors under *Sparks*, 440 Mich at 159-160, or why this analysis erroneously resulted in a less favorable award for plaintiff. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position." *Seifeddine v Jaber*, 327 Mich App 514, 519; 934 NW2d 64 (2019). "Failure to adequately brief an issue constitutes abandonment." *Id*. at 520. Plaintiff's argument is thus abandoned for our review.

But even if we were to consider the issue, there is no reversible error. There is no doubt the property-division award favored defendant over plaintiff. But we are not convinced the award was inequitable in light of the facts. The evidence showed plaintiff hid marital assets from defendant, such as his VA-disability income, and also used marital funds to pay for housing

without defendant's knowledge. Further, plaintiff failed to inform defendant that by quitting his job at Amazon, he would forfeit over $40,000 in stock options, which were potential marital assets. Given the parties' income disparities and plaintiff's behavior during the marriage, we are not "left with the firm conviction that the division was inequitable." *Sparks*, 440 Mich at 152. With no such conviction, we will not disrupt the trial court's discretionary ruling.[1]

## IV. SPOUSAL SUPPORT

Plaintiff's final argument is that the trial court's award of spousal support to defendant was unfair, inequitable, and an improper attempt to award defendant a share of plaintiff's indivisible VA disability income. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's award of spousal support for an abuse of discretion. *Loutts*, 298 Mich App at 25. "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 26 (quotation marks and citation omitted). We review for clear error the trial court's factual findings relating to an award of spousal support. *Smith v Smith*, 328 Mich App 279, 286; 936 NW2d 716 (2019). This Court must affirm a trial court's decision regarding spousal support unless it is "left with a firm conviction that the division was inequitable." *Sparks*, 440 Mich at 152. If the trial court's findings with regard to spousal support are not clearly erroneous, this Court must then determine whether the dispositional ruling was fair and equitable in light of the facts, *Sparks*, 440 Mich at 151-152, or constituted an abuse of discretion, *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010).

## B. LAW AND ANALYSIS

Whether to order spousal support, and to what extent, is a matter within the trial court's discretion. *Loutts*, 298 Mich App at 25. Courts do not apply a strict formula when calculating support; instead, they order "what is just and reasonable under the circumstances of the case." *Id*. at 30 (quotation marks and citation omitted). When determining whether to award spousal support, the trial court should consider the following factors:

> (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay

---

[1] We note that in cases where the value of certain property is in dispute, a trial court is "obligated to make such a valuation[.]" *Olson*, 256 Mich App at 627. In his brief on appeal, plaintiff states that "[t]he parties agreed that the marital home had an appraisal value of $350,000, and a net equity of somewhere between $53,882.15 and $46,744.00." He does not specifically challenge the trial court's failure to make findings as to the value of the marital home's mortgage, the parties' vehicles, or his stock options—the values the parties disputed below. Because plaintiff acknowledges there is no dispute as to the value of the marital home, and does not challenge the trial court's failure to value the disputed assets below, we need not consider whether the trial court erred in this regard.

support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington*, 288 Mich App at 356.]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (quotation marks and citation omitted).

The trial court went through each of the relevant spousal-support factors. It determined that, on balance, defendant was entitled to spousal support. It then awarded $1,500 per month in spousal support to defendant for an eight-year period. For the most part, the trial court's factual findings as to spousal support were supported by evidence in the record.[2] Plaintiff nevertheless makes two arguments challenging the trial court's ultimate determination that defendant was entitled to spousal support.

First, he contends that the parties' incomes were essentially the same because the trial court split his military pension in the property-division award. He believes the trial court erroneously concluded that plaintiff makes significantly more money. In making this argument, plaintiff offers no discussion or authority explaining why it was incorrect for the trial court to have considered his full military retirement in the context of spousal support. This argument is thus abandoned for our review. *Seifeddine*, 327 Mich App at 519-520. But plaintiff's argument would still fail even if we recognized that the parties' incomes were essentially equal given the distribution of plaintiff's military pension. Again, a the trial court's aim in awarding spousal support is to reach "what is just and reasonable under the circumstances[.]" *Loutts*, 298 Mich App at 25. Other than stating the parties' incomes were nearly equal, plaintiff fails to explain why it was nevertheless inequitable for the trial court to award spousal support under the circumstances of this case.

Next, plaintiff argues the trial court erred in awarding a greater spousal-support award than defendant requested. He contends that "the only logical conclusion" for the increased award is that it was the trial court's attempt to "fault" defendant for failing to timely disclose his VA-disability payments. According to plaintiff, the trial court's award of $1,500 a month in spousal support also violated federal law, because it essentially divided his VA-disability benefits as marital property, which was impermissible under 10 USC § 1408 and *Mansell v Mansell*, 490 US 581; 109 S Ct 2023; 104 L Ed 2d 675 (1989).

---

[2] We again note that the trial court erroneously concluded plaintiff held an apartment near Battle Creek. On appeal, plaintiff does not challenge this error in the context of the spousal-support award; thus, this argument is abandoned for our review. *Seifeddine*, 327 Mich App at 519-520. But even if we were to consider this factual error, plaintiff's purported Battle Creek apartment was, at best, a minor consideration for the trial court's spousal-support award, and is insufficient to warrant reversal.

In *Mansell*, 490 US at 594-595, the United States Supreme Court held that the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 USC § 1408 *et seq.*, "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." As *Mansell* recognized, "[i]n order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay." *Id*. at 583. "Because disability benefits are exempt from federal, state, and local taxation, military retirees who waive their retirement pay in favor of disability benefits increase their after-tax income." *Id*. at 583-584 (citation omitted). There is nothing in the record before us that demonstrates plaintiff waived his military retirement pay in favor of receiving disability benefits under the USFSPA. Thus, neither *Mansell* nor the USFSPA apply to plaintiff in this case, making his disability benefits subject to an award of spousal support.

Plaintiff also relies on the anti-attachment clause, 38 USC 5301(a)(1), which provides that "[p]ayments of benefits . . . shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." *Mansell* declined to address whether the anti-attachment clause "independently protects such pay[,]" having dispensed with the issue under 10 USC § 1408, *Mansell*, 490 US at 587 n 6. Therefore, in this respect, the Court's prior opinion, *Rose v Rose*, 481 US 619, 630; 107 S Ct 2029; 95 L Ed 2d 599 (1987), controls.

In *Rose*, the Court explained that the anti-attachment clause serves two purposes: to "avoid the possibility of the Veterans' Administration . . . being placed in the position of a collection agency[,]" and to "prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income." *Id*. at 630 (quotation marks and citation omitted, ellipses in *Rose*). It held that the exercise of state-court jurisdiction over veterans' disability benefits for purposes of support obligations was not contrary to the statute's purposes. *Id*.[3] Thus, the trial court did not err in considering plaintiff's VA-disability funds to the

---

[3] This reasoning is consistent with that of other states:

> Relying on the holding in *Rose*, the majority of state courts that have considered the issue have determined that a state court can consider, and use, VA disability benefits as a source of income when awarding alimony. See, e.g., *In re Marriage of Morales*, 230 Or App 132, 138–39, 214 P3d 81, 85 (2009) (holding that VA disability payments may be considered as income in awarding spousal support), and the cases cited therein: *Murphy v Murphy*, 302 Ark 157, 159, 787 SW2d 684, 685 (1990) (stating that nothing in federal law relieved former husband, whose income consisted of VA disability payments, from paying spousal support); *Riley v Riley*, 82 Md App 400, 410, 571 A2d 1261, 1266 (1990) (VA disability benefits may be considered as resource for purposes of setting alimony award); *Steiner v Steiner*, 788 So 2d 771, 778 (Miss, 2001) (same); *Holmes v Holmes*, 7 Va App 472, 485, 375 SE2d 387, 395 (1988) (same); and *Weberg v Weberg*, 158 Wis 2d 540, 544–45, 463 NW2d 382, 384 (1990) (same); see also *Clauson v Clauson*, 831 P2d 1257, 1263 n 9 (Alas, 1992) (stating in dicta that a "state court is clearly

---

spousal-support award. Moreover, plaintiff's suggestion that the trial court's spousal-support award impermissibly punished him for concealing his VA-disability benefits ignores the fact that the factors explicitly contemplate "a party's fault in causing the divorce," *Woodington*, 288 Mich App at 356, which could include plaintiff's behavior in relation to his VA-disability benefits.[4]

Affirmed.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Matthew S. Ackerman

---

free to consider post-divorce disability income and order a disabled veteran to pay spousal support even where disability benefits will be used to make such payments"); and *Davis v Davis*, 777 SW2d 230, 232 (Ky, 1989) (noting that, although VA disability benefits were not divisible as property, courts could resolve an inequitable property division with a spousal-support award). [*Nelms v Nelms*, 99 So 3d 1228, 1232 (Ala Civ App, 2012).]

[4] Plaintiff argued at oral argument that, in making the spousal support award, defendant essentially became a "creditor" to plaintiff's VA-disability funds, which are supposed to be protected from creditors. We agree there is some support for the proposition that spouses can become "creditors" for purposes of spousal support. See, e.g., *Krist v Krist*, 246 Mich App 59, 66; 631 NW2d 53 (2001) (making a spousal support nondischargeable in bankruptcy, thereby making the spouse a de facto creditor). But the spousal-support award in this case did not award defendant plaintiff's VA-disability benefits. Instead, it awarded her spousal support based in small part on the fact that plaintiff received these benefits every month, and that he concealed these benefits from defendant. In other words, defendant is not a creditor to the VA-disability funds, but rather a creditor to the total spousal support owed.