# STATE OF MICHIGAN

# COURT OF APPEALS

ZOLTAN A. LANCZY,

      Plaintiff-Appellee,

v

KATHY L. LANCZY,

      Defendant-Appellant.

UNPUBLISHED
October 16, 2014

No. 317356
Baraga Circuit Court
Family Division
LC No. 2012-006286-DO

Before: MURPHY, C.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Kathy L. Lanczy, appeals by right the trial court's judgment of divorce. Specifically, she contends the trial court's division of the marital estate was inequitable and argues the trial court should have ordered plaintiff, Zoltan A. Lanczy, to pay more spousal support for a longer period of time. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

The parties married in 2001. During the marriage, Zoltan Lanczy, who holds a degree in engineering, worked as a self-employed auto mechanic and later as a carpenter. In June 2010, Zoltan Lanczy travelled to Bagdad, Iraq, where he worked as a groundskeeper at a prison, an incinerator operator at a landfill, and eventually as a carpenter. His income significantly increased as a result of this employment. After leaving for Iraq, Zoltan Lanczy expressed his desire for a divorce.

Zoltan Lanczy suffered a severe injury—including a brain injury—after falling from a ladder while working in Iraq in February 2012. He received workers' compensation benefits. By the time of trial, he had recovered sufficiently to be able to work again and had found a job in Grand Rapids, which paid $40,000 to $44,000 per year. Kathy Lanczy suffers from fibromyalgia and severe arthritis. Her only independent source of income is social security disability.

Zoltan Lanczy inherited approximately 25 acres of land before the marriage. While still single, he gifted a five-acre parcel of the land to Kathy Lanczy in order to enable her to get a construction loan. The marital home, which was titled only in Kathy Lanczy's name, was built on the five-acre parcel. Testimony established that there was $67,000 still owed on the home.

-1-

Zoltan Lanczy retained the remaining 20 acres. He also owned a number of cars, motorcycles, and other vehicles, which were scattered across both parcels.

Zoltan Lanczy sued Kathy Lanczy for a divorce in May 2012. In August 2012, the trial court entered an order compelling Zoltan Lanczy to pay Kathy Lanczy $1,500 each month in temporary spousal support.

Following a bench trial, the court awarded Kathy Lanczy the marital home and the five acres of land on which it sits, and provided that Zoltan Lanczy would keep the 20 acres of adjacent land. The trial court awarded both parties the personal property found within the boundaries of their respective parcels, including "the vehicles that remain on their real property in whatever condition they may be in." The court also ordered Zoltan Lanczy to pay $3,700 to Kathy Lanczy to equalize the value of their banking and retirement accounts. The court awarded Zoltan Lanczy the four vehicles that he acquired post-separation, which included the only functioning vehicle in the parties' possession, a Dodge Intrepid. The trial court provided that each party would also be responsible for his or her personal debts and Kathy Lanczy would be responsible for the debt on the marital home.

Regarding spousal support, the trial court found that Zoltan Lanczy had a job offer for a job paying $40,000 to $44,000 per year in addition to a workers' compensation award, while Kathy Lanczy was receiving $6,588 in annual Social Security benefits. The court found that the standard of living of the parties had only recently risen due to Zoltan Lanczy's overseas employment. The court found that he had abandoned the marriage soon after finding more lucrative employment, and that Kathy Lanczy "will need a period of time to adjust to the change in life circumstances." The court further stated that Kathy Lanczy had greater need because she was responsible for the debt on the marital home. Accordingly, the court ordered Zoltan Lanczy to pay "modifiable spousal support in the amount of $1,500.00 per month . . . for a period of 60 months, commencing December 1, 2012." The court also ordered him to pay $1,000 of Kathy Lanczy's attorney fees because she was unable to bear the expense.

Thereafter, Kathy Lanczy moved for reconsideration. She argued that the court made a palpable error in failing to fully take account of the parties' circumstances, particularly her financial need, lack of transportation, disability, and Zoltan Lanczy's superior financial position and fault in causing the divorce. She asked the trial court to order Zoltan Lanczy to pay one half of the debt on the home, to clean up his real property, and to pay one half of all outstanding debts. She also asked the trial court to award her a vehicle in working condition and to extend the spousal support to at least the length of the marriage.

The trial court denied the motion and Kathy Lanczy now appeals in this Court on her own behalf.

## II. DIVISION OF THE MARITAL ESTATE

Kathy Lanczy argues that the trial court's ruling on the division of debt was unfair because she was left with the entire responsibility for the debt on the marital home. She asserts that the debt division should have been "50/50." On review, we consider "the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, [we]

must decide whether the dispositive ruling was fair and equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). The trial court's dispositional ruling will be upheld, unless we are "left with the firm conviction that the division was inequitable." *Id.* at 152.

On the basis of the testimony and exhibits, the trial court found that Zoltan Lanczy had a total of $15,690 in personal debts, Kathy Lanczy had a total of $8,999 in personal debts other than the debt on the marital home, and they had $514 in joint debts. These totals accurately reflect the amounts shown on the parties credit reports that were admitted into evidence at trial. Because the trial court's findings are based on the evidence in the record, and no argument has been offered to show that the evidence is inaccurate or incomplete, the trial court's findings of fact were not clearly erroneous.

Moreover, the court's dispositional ruling was equitable. See *Sands v Sands*, 442 Mich 30, 35; 497 NW2d 493 (1993). Kathy Lanczy was the sole owner of the marital home before the marriage and was awarded sole ownership in the divorce. It was not inequitable, under the circumstances, for the trial court to require her to continue to be solely responsible for the debt on the property she owns. Further, the trial court did account for her increased obligations when it considered whether and to what extent it should order spousal support. The trial court also ordered Zoltan Lanczy to pay Kathy Lanczy $3,700 to equalize the value of the parties' accounts and ordered him to pay $1,000 in attorney fees on Kathy Lanczy's behalf. Under the circumstances, we conclude that the court crafted an equitable division of property and assets.

It was likewise, not an inequitable result to award Zoltan Lanczy the vehicles he acquired after the parties' separation. Kathy Lanczy asked the trial court to order Zoltan Lanczy to turn over one of his vehicles after putting it into working order, but the trial court declined to do so. Given that the trial court attempted to make the division of assets roughly equal, and awarded Kathy Lanczy spousal support, the fact that the trial court did not award her a vehicle in working condition does not render the property division inequitable.

On the record before us, we are not left with the firm conviction that the division was inequitable. *Sparks*, 440 Mich at 152.

## III. SPOUSAL SUPPORT

Kathy Lanczy also argues that the trial court should have provided her with more generous spousal support. We review the court's decision to award spousal support for an abuse of discretion, but review the factual findings underlying its decision for clear error. *Loutts v Loutts*, 298 Mich App 21, 25-26; 826 NW2d 152 (2012). A trial court abuses its discretion when its "decision falls outside the range of reasonable and principled outcomes." *Id.* at 25.

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . . the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay

and the character and situation of the parties, and all the other circumstances of the case. [MCL 552.23(1).]

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Loutts*, 298 Mich App at 26 (quotation marks and citation omitted). In deciding whether to award spousal support, the trial court should consider several factors, including

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id*. at 31 (quotation marks and citations omitted).]

The trial court considered and discussed each of these factors. It found that Zoltan Lanczy had a greater ability to work and pay support. The trial court also found that Kathy Lanczy had the need for spousal support because her only income is from Social Security and she is responsible for the debt on the marital home. The court determined that equity weighed in favor of awarding spousal support because Zoltan Lanczy abandoned the marriage and was now in a superior financial position.

Kathy Lanczy has not challenged the trial court's factual findings, but argues that the court's award of $1,500 per month for 60 months is inadequate. She asserted in her motion for reconsideration that the trial court "did not fully take into account the fact" that Zoltan Lanczy effectively lived off her "until she became disabled and unable to work at which point he promptly left her to pursue a lucrative career on his own." It is clear from the record that the trial court did take these facts into account. Although the trial court did not comment on whether Kathy Lanczy supported Zoltan Lanczy during the marriage, it did find that he "abandoned the marriage and is in a superior financial position to support himself." Kathy Lanczy may have wanted to weigh these circumstances more heavily in her favor, but she failed to show how the court erred in not doing so.

She has also not demonstrated that the trial court's decision to order spousal support of $1,500 per month for 60 months fell outside the range of reasonable and principled outcomes. She testified that at the time of the trial she was paying $506 per month for the mortgage, and that she had previously been paying $801.61 per month. The trial court took into account that neither party had a very high standard of living to begin with. Moreover, the award of spousal support was made subject to modification "upon a change of circumstances." Thus, if the circumstances have changed since the entry of judgment, she may petition the trial court to modify the original order. MCL 552.28.

## IV. OTHER RELIEF

Finally, Kathy Lanczy argues that the trial court should have ordered Zoltan Lanczy to clean up the 20-acre parcel because it is depressing the value of her property and constitutes a nuisance. She cites no authority for the proposition that a trial court has the authority to order a party to a divorce to abate an alleged nuisance on real property awarded in the divorce judgment. Therefore, she has abandoned this claim of error on appeal. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

There were no errors warranting relief.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Kelly