*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NEVINE RUEFIEL,

          Plaintiff-Appellant/Cross-Appellee,

v

JOSEPH RUEFIEL,

          Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
November 18, 2025
3:28 PM

No. 369648
Oakland Circuit Court
LC No. 2022-511169-DM

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

In this lengthy and contentious divorce case, plaintiff appeals as of right the trial court's judgment of divorce. Defendant cross-appeals the same order. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose after plaintiff filed for divorce in January 2022. According to plaintiff, defendant had been abusive for years but the final straw that led to her filing for divorce was when she found him having phone sex via FaceTime with a female employee.

At the outset of the case, the trial court entered ex parte orders for maintaining the status quo and imposing a mutual restraining order on the parties. Throughout the proceedings, plaintiff alleged that defendant repeatedly violated these or similar orders, which resulted in plaintiff filing numerous motions to enforce. The parties agreed to arbitrate certain issues, including status quo violations. The parties finally proceeded to a bench trial on the matters not sent to arbitration. Each party listed many proposed witnesses and exhibits, but ultimately only plaintiff, defendant, and each party's retained financial expert testified. The trial court found plaintiff's and defendant's testimonies to be self-contradictory and often incredible, and found that both parties had behaved poorly during the proceedings.

Relevant to the arguments raised on appeal, the trial court found that, while plaintiff alleged defendant dissipated over $160,000 on the female employee she alleged was his paramour, plaintiff only proved that defendant dissipated about $20,000 on her. It also found that defendant dissipated a $50,000 forfeited earnest money deposit for a house in violation of the trial court's status quo

-1-

orders, and that plaintiff dissipated $15,000 from a bank account that she held jointly with her brother but removed her name from before filing for divorce. The bulk of the marital estate concerned defendant's numerous businesses. The trial court awarded defendant all of his businesses, as well as an estimated $3.3 to $3.6 million in personal guarantees defendant took on in support of his businesses. The businesses had an estimated $7.7 million in total outstanding accounts receivables that the trial court ordered would be equally divided by the parties. After accounting for the speculative nature of whether all the accounts would actually be collected, the trial court ruled that any collections on the accounts as they existed by the time of the judgment would be deposited into defense counsel's IOLTA and split between the parties on a quarterly basis. Other divisions at issue in this case include the trial court's awards of defendant's original and amended 2021 tax returns,[1] as well as its decision not to award plaintiff any offset for gold bars she alleged defendant removed from the parties' safe-deposit box. In total, the trial court valued the marital estate at about $1,970,000, noting that significant portions of the marital estate were not liquid or remained in arbitration, and a "substantial amount of financial assets awarded to either party [were] not yet in existence and await[ed] collections."

The trial court declined to order defendant to pay plaintiff's attorney fees because both parties behaved poorly, which forced the other to incur unnecessary attorney fees. While plaintiff had demonstrated an inability to pay her attorney fees, the trial court reasoned that she had not properly demonstrated that defendant had the ability to pay her fees "exceeding $350,000[,]" given the fact that the majority of the marital estate's value was speculative and not liquid at the time. It also found that (1) plaintiff "inflated her financial need for fees by a multi-year unemployment and (at present) underemployment," (2) the total amount of fees plaintiff requested included "impermissible items related to active litigation in front of the arbitrator," and (3) plaintiff's "excessive amount of exhibits compared to her actual arguments at trial caused unnecessary trial preparation fees." Because the trial court declined to review plaintiff's 96-page fee list "on a line-by-line basis to determine which attorney fees may be permissible" and because plaintiff "present[ed] her need with unclean hands," it denied her request for attorney fees.

The trial court did, however, award plaintiff expert witness fees, reasoning:

> However, given that [plaintiff's expert] performed a business valuation and the income valuation (to which [defendant's expert] generally concurred) which formed a cornerstone of the trial discussion, the court will order [defendant] to pay [plaintiff's expert's] fees. Because of the uncertainties of 1) what is actually owed to [plaintiff's expert] and 2) whether any of his fee is attributable to matters in arbitration, the court orders both counsel to undertake a line by line analysis of [plaintiff's expert's] bill. To the extent that any fee is attributable to arbitration, it shall be removed. [Defendant] shall pay [plaintiff's expert], and indemnify [plaintiff], an amount not to exceed $95,700 (after removal of any fees attributable to arbitration matters) within 180 days of this order's date.

---

[1] Defendant filed his 2021 tax returns as "married filing separate" which plaintiff alleges was contrary to the parties' status quo and in bad faith.

The parties now appeal.

## II. EQUITABLE DIVISION

Both parties first argue that the trial court's division of the marital estate was unfair to them. We disagree.

## A. STANDARD OF REVIEW

When reviewing a trial court's dispositional ruling, "this Court must first review the trial court's findings of fact for clear error." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. "The trial court's factual findings are accorded substantial deference." *Id*. If the trial court's findings of fact are upheld, this Court must decide whether the trial court's dispositional ruling was fair and equitable in light of those facts." *Id*. "This Court will affirm the lower court's discretionary ruling unless it is left with the firm conviction that the division was inequitable." *Id*. at 717-718.

## B. PERSONAL GUARANTIES AND ACCOUNTS RECEIVABLES

The parties both argue the trial court erred by awarding defendant the entire $3.6 million in personal guaranties and his businesses, and splitting the accounts receivables between the parties. Plaintiff asserts that the trial court overcounted defendant's debt, because it was unclear how much of the debt he would actually end up having to personally pay. She also argues that, by awarding her half of any future collected accounts receivables, but no interest in the actual businesses, the trial court rendered her a "silent partner with no control." She contends the proper distribution would have been to award her a lump sum of half the value of the accounts receivables as established by the trial court—$2.5 million. Defendant, on the other hand, argues that the trial court erred in awarding him all of the debt but awarding plaintiff half of the receivables because, essentially, this split gives plaintiff the benefit of the businesses without any of the connected liability. He asserts that both the debt and the accounts receivables are, essentially, a single business asset, and, therefore, both should be awarded to the business owner—defendant.

While plaintiff claims the trial court's award gave her no way to actually collect the money, the trial court's order provided detailed instructions on how this distribution would work. To the extent plaintiff claims she cannot enforce this ruling, she remains free to file a motion to enforce. While it is true the trial court recognized that it did not want to prolong the litigation given the interest in making divorces final, the fact remains that, as the trial court recognized, the vast majority of the estate's assets and debts are speculative at present. Indeed, plaintiff herself agrees on appeal that she does not expect that defendant will collect all $5 million of the trial court's accounts receivables valuation. Yet she nonetheless asks for a front-end distribution of half of a future, contingent amount that she acknowledges is unlikely to be accurate. The unreasonable nature of this request is further compounded by the fact that plaintiff not only believes that defendant should be responsible for all the related business debt, but that he should get a lesser offset for it given the unlikelihood that defendant will actually be personally responsible for the full amount.

Defendant, on the other hand, argues that the trial court gave no legal reasoning for its award, which is clearly belied by the trial court's 95-page opinion. Defendant believes that he either should not have been assigned the entire debt, which he contends is more likely to come due than the accounts receivables being paid, or should have been given all the accounts receivables. It is not necessary to get into the weeds of the parties' arguments regarding which scenario was more likely—that defendant would have to pay the full amount of the debt or that defendant would collect the full amount of the receivables—because, as the trial court recognized, both are speculative. Whether one possibility is more speculative than the other does not negate the fact that the trial court had to divide an estate when the vast majority of its debts and assets were dependent on speculative, future events.

As for defendant's argument that both should be awarded to him, defendant ignores two important considerations. First, the trial court awarded defendant his businesses, but only split the accounts receivable that were outstanding *at the time* between the parties. That is, defendant, as sole owner of his businesses, is the sole owner of all future accounts receivables that can be used to pay off the businesses' debts. Defendant is not being forced to take on 100% of the debt while netting only 50% of the profit; he is only being forced to forfeit the portion of the profit incurred while the parties were married—which, by defendant's own admission, was obtained with substantial assistance from plaintiff. Second, defendant neglects to address the fact that the trial court found the parties to be in uneven financial positions. While the trial court attributed some of this to plaintiff's voluntary un- or underemployment, it also found that plaintiff substantially contributed to the marital estate by managing the physical estate and raising the parties' child while defendant worked. To award defendant all the accounts receivables—which, again, constituted the vast majority of the marital estate's assets—would deprive plaintiff of a major portion of the marital estate.

In sum, given that the overwhelming majority of the estate's assets and liabilities relied on speculative, future events, the trial court awarded defendant the full benefit of his businesses, plus the liability that came with them, while awarding plaintiff half of the share of the businesses' profits obtained *during the marriage* and with her support. Given these facts, "the trial court's dispositional ruling was fair and equitable in light of [the] facts." *Berger*, 277 Mich App at 717.

## C. DISSIPATION

Plaintiff also raises several challenges to the trial court's dissipation findings. Specifically, she alleges the trial court erred by failing to properly consider (1) defendant's various withdrawals from the parties' accounts in violation of the court's orders, (2) the full amount defendant dissipated on his employee, (3) the gold bars in the safe-deposit box, (4) defendant's use of marital funds to defend himself in the domestic violence case,[2] (5) defendant's bad behavior in filing his original and amended 2021 tax returns, and (6) defendant's earnest money deposit on a home during the divorce proceedings. She also argues the trial court erred by considering the joint account she held with her brother as dissipated assets. We disagree.

---

[2] During the proceedings, defendant was convicted of domestic violence against plaintiff.

-4-

## 1. WITHDRAWALS

The entirety of plaintiff's argument as to this issue is:

> The Trial Court further declined to add back $159,141.13 in dissipated funds that Appellee-Husband withdrew from one of the parties' accounts in clear violation of the status quo order, and the Trial Court's reasoning in support of this decline is legally erroneous. For one, the Trial Court appears to have become a research attorney for Appellee-Husband, as the Trial Court took it upon itself to "Google" certain terms on an account statement and then utilize that search to generate arguments for Appellee-Husband. As with the $50,000 earnest money deposit, the Trial Court agreed that these withdrawals were a plain violation of the Trial Court's order, but the Trial court declined to add the amounts back because Appellant-Wife failed to meet an illusory burden she did not know she had to meet. Pursuant to *Sands* [*v Sands*, 442 Mich 30; 497 NW2d 493 (1993)], the Trial Court erred by making these findings and should have counted the $50,000 earnest money deposit as a positive on Appellee-Husband's side of the marital balance sheet and then treated the $151,151.13 [sic] as dissipation of assets in favor of Appellant-Wife's portion of the marital estate due to Appellee-Husband's bad acts (i.e. lying under oath and violating court orders) during the divorce proceeding. *Sands*, 442 Mich at 32-33.

The portion of *Sands* cited by plaintiff addresses a trial court's failure to "take[] some sort of punitive action in light of [a husband's] persistent attempts to conceal assets." *Sands*, 442 Mich at 32-33. Notably, nowhere in her argument does plaintiff actually claim that defendant's withdrawal of these funds was in an effort to conceal them from her during the divorce proceedings. Instead, she solely focuses on the fact that he lied under oath and violated the trial court's orders in so doing. She then criticizes the trial court for acting as "a research attorney" for defendant because it looked up some entries in her withdrawal chart online and found they were likely utility payments for some real property the parties held in Florida. What plaintiff fails to address, however, is that the trial court also did not need to look up some of the funds plaintiff claimed were dissipated because they were facially withdrawals for maintaining the marital estate—such as payment for a lawn care service. The trial court found plaintiff's inclusion of this, and similar withdrawals, to be disingenuous, reasoning: "In other words, a portion of [plaintiff's] argument is that [defendant] dissipated funds and violated the court's order, by spending them on maintaining the marital estate."

As for the alleged "illusory burden" that plaintiff did not know she had to meet, this appears to be plaintiff's burden of proof. The trial court ultimately determined that, while it was true that defendant's withdrawals violated its orders, plaintiff "did not establish that these expenses represented a dissipation of marital assets." It is nonsensical for a party in litigation to assume that he or she does not have to support his or her claims with evidence. One of the trial court's biggest problems with the parties in this case was that, despite them submitting massive tomes of purported evidence, most of the documents did not actually support their allegations. "It is generally well established that issues of fact in civil cases are to be determined . . . with the burden of persuasion placed upon the party asserting the claim." *Blue Cross and Blue Shield of Mich v Milliken*, 422 Mich 1, 89; 367 NW2d 1 (1985). Despite bearing the burden to prove her own claims, plaintiff

seems to believe the trial court should, in essence, search for proofs to justify her claims for her. "Trial courts are not the research assistants of litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute." *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008). Plaintiff failed to prove that the withdrawals were dissipated assets, and, indeed, fails to make any attempt at proving so on appeal. The trial court, therefore, did not err by refusing to consider plaintiff's unproven claims of dissipation with respect to these withdrawals.

## 2. ALLEGED PARAMOUR AND GOLD BARS

Plaintiff's arguments on these points fail for the same reason as her withdrawal argument. The trial court carefully went through all of the expenditures plaintiff claimed were for defendant's alleged paramour and provided a detailed explanation for which expenses she actually proved and those she did not. On appeal, plaintiff's arguments for these two dissipation claims is more or less that defendant did not prove they *were not* dissipated in the way she proposed. But, again, plaintiff bore the burden of proving her claims. *Blue Cross and Blue Shield of Mich*, 422 Mich at 89. As for the parts of defendant's claims that plaintiff emphasizes are implausible or impossible on appeal, such as defendant's contention that he took his paramour on a business trip during a period in which she was fired, the trial court already considered these expenses were already considered as dissipated. Because plaintiff did not provide proof to support her claims for the remaining alleged expenditures on the paramour or gold bars, the trial court did not err in declining to consider them as dissipated funds.

## 3. DOMESTIC VIOLENCE CASE ATTORNEY FEES

Plaintiff argues that the trial court erred by failing to consider the $20,000 defendant paid his attorneys in the domestic violence case as dissipated assets. However, nowhere in plaintiff's pretrial brief or closing brief does she ever request that the trial court do so. Plaintiff harbored any alleged error in this respect by failing to raise it in the trial court, and may not now use it as an appellate parachute. *Loutts v Loutts*, 298 Mich App 21, 36; 826 NW2d 152 (2012).

## 4. TAX RETURNS

Plaintiff argues the trial court erred by awarding the total amount of defendant's original 2021 tax returns to him, and only awarding plaintiff half of his amended 2021 tax returns. As for the original tax returns, plaintiff acknowledges on appeal that she "proposed for this amount to be awarded to Appellee-Husband," but nonetheless argues that the trial court should have "accounted for it and awarded some equalization" to her. As with the domestic violence attorney fees, plaintiff never requested any equalization in her closing brief. Again, plaintiff cannot harbor error and then use it as an appellate parachute. *Loutts*, 298 Mich App at 36.

As for the amended tax returns, plaintiff did, in fact, request that the trial court award her the $48,079 being held in defense counsel's IOLTA, which the trial court recognized. While the trial court did not provide specific analysis under the amended tax return bullet point, when read in conjunction with its earlier reasoning, the trial court's division was fair and equitable in light of its findings, which themselves were not clearly erroneous. *Berger*, 277 Mich App at 717. The trial court found that, "[b]ased upon its ability to judge the parties' credibility across five days of

trial," it believed they "could not work together to file taxes and this division—rather than subterfuge or acting in secret—prompted their separate filings." We defer to the trial court's "findings of fact stemming from credibility determinations." *Id*. at 718. The trial court's finding that the parties were simply unable to work together does not leave room for a firm conviction that a mistake was made. *Id*. at 717. The parties had a particularly contentious divorce, and often seemed to be arguing over any issue they could find. While there may be room for doubt as to defendant's intentions when filing his original tax returns, the trial court's finding based on the facts of the case was not clearly erroneous. Plaintiff's entire argument on appeal for why she believes she should get more than half of defendant's amended tax returns depends on defendant's "bad acts in regard to the tax returns[.]" Given that the trial court did not clearly err in finding there were no bad acts surrounding defendant's tax returns, plaintiff's argument fails.

### 5. EARNEST MONEY DEPOSIT

Plaintiff argues that the trial court "included the $50,000 [earnest money deposit] in the negative in [defendant's] column of the marital balance sheet[,]" which "actually treated the $50,000 as an advance to [plaintiff] when calculating the property division, causing [her] portion to be $50,000 less than it should have been." This argument lacks merit. The trial court unequivocally found that the earnest money deposit was dissipated and treated it as an advance on defendant's distribution. The column in which the deposit was included as a negative value concerns defendant's "actual portion" of the estate that would be awarded. Therefore, mathematically, a negative value in his column diminishes the amount of the estate he receives, and, as a result, necessarily increases plaintiff's share of the estate.

### 6. JOINT ACCOUNT WITH BROTHER

Plaintiff finally argues the trial court erred by considering the joint account she held with her brother as dissipated assets and counting it as an advance against her share of the estate. Her primary arguments are (1) that the money was a gift from her parents and constituted her own, separate property, and (2) that the account was now solely in her brother's name and the trial court therefore lacked jurisdiction over distributing it "even if it was marital property[.]" Plaintiff's testimony in this respect undermines her claims. She explicitly testified that she took her name off the account before she filed because she did not want defendant to access the money. If it were truly a gift from her parents that constituted her separate property, she would not have needed to remove her name. Even if her behavior was inadvertent, and the contents of the account truly were her separate property, all plaintiff had to do was provide evidence to the trial court to support this claim. But, as the trial court noted, neither party called plaintiff's brother (or parents, for that matter) to testify, and plaintiff otherwise provided no evidence to refute defendant's claim that she dissipated the funds. Without any evidence beyond the parties' testimonies, the trial court was left to determine whether the funds were dissipated based on the parties' representations and behavior. On this basis, the trial court was well within reason to consider plaintiff's attempt to conceal assets when equitably dividing the marital property. *Sands*, 442 Mich at 36.

### III. ATTORNEY AND EXPERT WITNESS FEES

Plaintiff moved for both attorney and expert witness fees under MCR 3.206(D), which states:

(1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

(a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

(b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

The parties dispute the trial court's decisions to award—or not to award—attorney and expert witness fees. We disagree with both parties' arguments.

## A. STANDARD OF REVIEW

"We review a trial court's decision whether to award attorney fees for an abuse of discretion, the trial court's findings of fact for clear error, and any questions of law de novo." *Loutts*, 298 Mich App at 24. A trial court's decision to award expert witness fees is similarly reviewed for an abuse of discretion. *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 466; 633 NW2d 418 (2001). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). The proper interpretation of a court rule is a question of law that this Court reviews de novo. *CAM Const v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002).

## B. ATTORNEY FEES

Plaintiff argues the trial court should have awarded her attorney fees because the reasons it cited to justify denying her request were incorrect and inapplicable. Specifically, she challenges the trial court's opinion that she had "unclean hands" by contributing to the length and expense of the proceedings, because (1) the many motions she filed were necessary because defendant kept violating the trial court's orders, and (2) the reason she did not use many of the exhibits and witnesses she listed was because they concerned issues that were ultimately resolved through arbitration or stipulation. She also challenges the trial court's focus on her voluntary un- or underemployment. Plaintiff takes the trial court's considerations out of context.

The trial court began its analysis by noting that plaintiff's exhibits demonstrating how much she owed her attorneys and expert were unclear, and that it was her "obligation to identify how much was owed, and to whom, with specificity and accuracy." It emphasized that a party seeking fees under MCR 3.206(D)(2)(a) or (b) "must allege facts sufficient to show that" they are entitled to their sought fees. After noting this concern, the trial court declined to award fees under MCR 3.206(D)(2)(b) because, while it recognized that there were likely fees incurred because defendant failed to comply with its orders, plaintiff, too, "acted poorly" throughout the

-8-

proceedings, and likely contributed to the high attorney fees for which the parties found themselves responsible. During the proceedings, defendant raised concerns that plaintiff was violating the trial court's status quo orders by charging much more than she used to on her credit cards because the arbitrator had ordered defendant to pay them off. Indeed, defendant's payment—or nonpayment—of plaintiff's credit card bills was a recurring problem that was frequently brought to the trial court or arbitrator. It stands to reason that if defendant's refusal to pay the full amounts was because of plaintiff's violation of the status quo order, the resulting motions plaintiff filed were, at least partially, her fault. The trial court also noted that it had to issue an order forbidding the parties from filing motions "on any subject pending before the arbitrator" because plaintiff frequently filed motions regarding the status quo, despite the parties' express agreement that status quo issues were to be arbitrated.

As for the witness and exhibit lists, this reference by the trial court was related to its frustration that, despite having such a voluminous record, the parties had still failed to prove many of their claims. While it is certainly likely that many of the exhibits and witnesses plaintiff listed became irrelevant as the proceedings wore on, this did not negate the fact that plaintiff's final updated witness list—filed in the midst of trial—listed a total of 105 witnesses, about half of which were specific witnesses, or the fact that, "of the 260 separate exhibit files presented to the court[,]" plaintiff referred to only 50 during the trial. The trial court did not decline to consider defendant's bad acts just because plaintiff also behaved poorly; it declined to award fees as a whole on the basis of defendant's bad acts because they were not the only bad acts that gave rise to the inflated fees in this case.

The trial court also declined to award attorney fees under MCR 3.206(D)(2)(a), because, while plaintiff demonstrated that she was unable to pay the roughly $350,000 in attorney fees she submitted to the trial court, there remained a question regarding defendant's ability to pay. Specifically, the trial court recognized that, while defendant "ha[d] the ability to pay fees on paper, . . . much of the liquid assets in the estate [were] hypothetical and rel[ied] on future collections." As a result, the trial court did "not believe [plaintiff] developed, as a matter of law based on [defendant's] actual assets from the trial record," that defendant had the ability to pay plaintiff's "requested fees exceeding $350,000."

The trial court's reasoning could have stopped here. But it also took issue with the fact that, while plaintiff's claim that she had no income was "factually accurate, it [was] misleading given [her] voluntary unemployment/underemployment." Essentially, the trial court noted that, not only did plaintiff's own poor behavior and excessive filings contribute to her enlarged attorney fees, she artificially "inflated her financial need for fees" by refusing to work, or, at least later during the proceedings, by being voluntarily underemployed. It further noted, perhaps most importantly, that some of the fees listed pertained to representation her attorneys provided for arbitration, the cost of which the parties previously agreed they would equally share. The trial court declined to "review the fee list, remove the entries for which the parties agreed would be addressed by the arbitrator, and recalculate what amount is properly attributable to matters in [the trial court]." The trial court's decision to refuse to award plaintiff attorney fees under either subsection of MCR 3.206(D)(2) was, therefore, not an abuse of discretion.

## C. EXPERT WITNESS FEES

Defendant, on the other hand, argues it is nonsensical that the trial court denied plaintiff's request for attorney fees but granted it for expert fees under the same rule. But this again overlooks the nuance of the trial court's reasoning. The trial court's ultimate decision not to award plaintiff's attorney fees relied on the following factors: (1) plaintiff failed to demonstrate that defendant could afford to pay over $350,000 in fees; (2) plaintiff contributed to the heightened fees through her own bad behavior and irrelevant submissions; (3) plaintiff's own inability to pay was, at a minimum, exacerbated by her refusal to procure employment commensurate with her skills and education; and (4) plaintiff's fee list contained impermissible fees mixed in, and, given Factors (1) through (3), the trial court refused to review it line-by-line to parse out which fees were permissible.

As for Factor (1), there is a large distinction between whether defendant can pay $350,000 and whether he can pay $95,000. While not explicitly stated, the trial court's decision, read as a whole, implies that, while it did not believe plaintiff proved defendant could afford $350,000, it did believe she had shown that he could at least afford $95,000. Factor (2) is addressed by the language with which defendant takes most issue. Defendant argues the trial court's sole reason for awarding expert fees was because of how helpful plaintiff's expert was in the trial court's decision, and "nothing in MCR 3.206(D)(2) states that fee-shifting is warranted if/when a party's expert is particularly helpful to the Court." Defendant mischaracterizes the trial court's reasoning. The trial court found that plaintiff's expert "performed a business valuation and the income valuation (to which [defendant's expert] generally concurred) which formed a cornerstone of the trial discussion[.]" That is, unlike plaintiff's numerous filings that were often either based on the parties' misconduct, or irrelevant and ultimately unused during the trial, everything plaintiff's expert did—and, as a result, all the fees he charged—were relevant, and, indeed, crucial, to the ultimate disposition of the case. This is why the trial court then ordered the parties to conduct a line-by-line analysis of plaintiff's fee list pertaining to her expert; to ensure that defendant was only required to pay for fees actually incurred for the trial court proceedings. While Factors (1) through (3) supported the trial court's rationale for declining to go through—or order the parties to go through—plaintiff's 96-page attorney fee list to pull out inapplicable fees (Factor (4)), they did not warrant the same refusal when considering her expert's fees.[3]

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron

---

[3] Factor (3) is entirely inapplicable to the justifiability of plaintiff's expert's fees, and need not be addressed.