*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIRK JON BUSH,

Plaintiff/Counterdefendant-Appellant,

v

LORI LYNN BUSH,

Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
November 19, 2025
11:14 AM

No. 368236
Ottawa Circuit Court
LC No. 15-079651-DO

KIRK JON BUSH,

Plaintiff/Counterdefendant-
Appellant/Cross-Appellee,

v

LORI LYNN BUSH,

Defendant/Counterplaintiff-
Appellee/Cross-Appellant.

No. 368343
Ottawa Circuit Court
LC No. 15-079651-DO

Before: RICK, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In Docket No. 368236, plaintiff/counterdefendant-appellant Kirk John Bush (plaintiff) appeals as of right an order modifying spousal support and granting his request for attorney fees in part. In Docket No. 368343, defendant/counterplaintiff-appellee/cross-appellant Lori Lynn

-1-

Bush (defendant) appeals by delayed leave granted[1] the same spousal support order. We vacate in part and remand.

## I. FACTUAL BACKGROUND

The parties in this matter were married on September 19, 1987. The marriage lasted until the entry of a judgment of divorce in April 2016. During the marriage, the parties raised three children, who are all now adults. The parties' marriage was relatively traditional, with plaintiff acting as the primary income producer and defendant acting as a stay-at-home mother, although she was intermittently employed throughout the marriage. Relevant to this appeal, the trial court awarded defendant rehabilitative spousal support as part of the judgment of divorce. The trial court considered all of the relevant spousal support factors, including the relationship between the parties, their ability to earn income, and their personal needs, among other factors. Defendant's fault in causing the divorce—namely that she engaged in an affair in 2003, which damaged the marriage—was also considered, but the court found it was outweighed by other factors supporting spousal support. The trial court imputed $40,000 in annual income to defendant based on her education and work history. As part of the spousal award, the court ordered:

> To protect both parties, they will be required to provide notice to the opposing party of any increase in income of 10% or more in any calendar year. Failure to provide this information to the other party will expose that party to the payment of attorney fees and expenses generated by the opposing party's effort to gather the withheld information.

Ultimately, plaintiff was ordered to pay defendant $7,500 monthly for three years, which would then be reduced to $6,000 for next three years, then $4,500 for the final six years.

On August 30, 2022, plaintiff filed a motion to terminate the parties' uniform spousal support order (USSO). Plaintiff explained that defendant married John Kaminski on August 12, 2022, a person with whom she allegedly had an extramarital relationship that contributed to the breakdown of the marriage. Plaintiff stated that he was employed as Vice President of a company called Metal Flow and maintained consistent income. He further stated that, although defendant was unemployed when the judgment of divorce was entered, she had gone on to own multiple properties, including a home purchased for $435,000 in January 2021 and another parcel purchased for $67,500 in January 2022. Additionally, plaintiff stated that defendant sold a previous home for $985,000 in December 2020 after purchasing it for $258,000, realizing a $727,000 gain. Plaintiff also noted that defendant co-owned a company with Kaminski called Retirement Financial Group, LLC (RFG).

Plaintiff continued that the trial court awarded defendant spousal support primarily because it found that defendant could not support herself financially and only had the capacity to earn approximately $40,000 per year. He argued that the trial court discounted evidence of defendant's

---

[1] *Bush v Bush*, unpublished order of the Court of Appeals, entered December 11, 2023 (Docket No. 358343). This Court consolidated the appeals in Docket No. 368236 and 368343 in the same order.

alleged infidelity. However, plaintiff claimed that defendant and Kaminski had an ongoing relationship before and during the divorce proceedings, which they denied during trial testimony. Based on the foregoing, plaintiff argued that the USSO should be terminated. Plaintiff stated that MCL 552.13(2) provides that courts may terminate spousal support when a recipient remarries, and that Michigan caselaw additionally supported modification when the recipient concealed a relationship or delayed marriage to continue receiving support. Plaintiff also argued that defendant's improved financial circumstances eliminated the need for ongoing spousal support.

Defendant responded that plaintiff's motion was primarily based on defendant's remarriage, but that her remarriage did not constitute an automatic termination event under the USSO. Defendant argued that she followed the Court's expectations by returning to the workforce and establishing a financial consulting business in 2017. Defendant stated that she had generated income averaging $77,078 over the past three years and that she also received income from interest and dividends on separate assets. Defendant pointed out that plaintiff's income remained approximately $330,000 annually plus rental property income, suggesting that he was more than capable of paying spousal support. Defendant contended that, while her income has increased since 2016, the change was not significant enough to justify termination or modification of spousal support. Defendant thus asked the court to deny the motion to terminate the USSO.

A hearing on the motion to terminate the USSO was held in April 2023. Plaintiff called Eric Larson as an expert witness. Larson testified that he is a shareholder at Doeren Mayhew, working in the valuation and litigation support services group. Larson testified that he was retained by plaintiff to offer an opinion on defendant's income. To evaluate defendant's income, he relied primarily on her tax returns, financial statements for her business, and related documentation. He used adjusted gross income (AGI) from tax returns as a starting point, then adjusted defendant's income to reflect "historical income"—meaning income available to meet household obligations—which he considered more appropriate for spousal support purposes. The adjustments also included accounting for pass-through income from defendant's 50% ownership interest in RFG, noting that such income may not reflect actual cash received. Larson additionally adjusted defendant's income by adding back discretionary business expenses and backing out alimony received, basis adjustments for capital gains on stock awarded in the divorce, and trust income that was deemed separate property.

Larson noted that distributions and guaranteed payments from RFG were split approximately 60/40 between Kaminski and Bush over four years, despite equal ownership, with no clear explanation in the tax returns for the disparity. He also testified that depreciation deductions reduce taxable income but do not create cash, and that such deductions are typically added back for support calculations. Larson additionally testified that the most plaintiff made in income was in 2020, when she earned more than $500,000, which included $342,000 of long-term capital gains for the sale of stock. However, on cross-examination, Larson acknowledged that some income reported, including the 2020 capital gains, resulted from the sale of stock with a very low basis. Larson also agreed that some items, including IRA conversions, may not have been available as cash for support. He maintained, however, that certain expenses, such as health insurance paid by the business, were discretionary expenses that benefited defendant and should be considered in her income for support purposes. Larson stated that the resulting "historical income" figure is the most appropriate measure for the court to consider. Larson did not directly

opine on defendant's need for continuing spousal support, but asserted that his calculation of her income was "a reasonable estimate" for the purposes of calculating spousal support.

Defendant testified extensively about her personal, professional, and financial circumstances. She stated that she is a certified financial planner and confirmed that she owns 50% of RFG, with Kaminski owning the other half of the business. Defendant explained the history of her home ownership, including the purchase and sale of properties, and clarified that proceeds from the sale of her previous home were used for renovations and the purchase of her current residence. She additionally acknowledged that Kaminski contributed to household expenses such as utilities and groceries but did not contribute to equity payments on the home. Defendant also stated that she solely owns the home and placed the home in a trust to keep her assets separate following her previous divorce from plaintiff. Defendant testified that she also owned another property, held in an LLC for liability reasons, which was occupied by a friend with cancer.

Regarding her business, defendant testified that she and Kaminski work full-time at RFG, and that their business commissions were pooled without internal tracking of which partner generated which commission. She acknowledged that in some years, Kaminski received higher guaranteed payments, but claimed this was to address his personal debt. Defendant asserted that in 2022, her income from RFG consisted of a guaranteed payment of $50,000, plus health insurance and a health savings account. Defendant disputed Larson's analysis of her income, particularly objecting to the inclusion of capital gains from stock sales and IRA distributions, neither of which resulted in cash income. Defendant also questioned the amount attributed to health insurance as a discretionary expense, stating that the actual cost per employee was lower than what was reported in Larson's analysis.

Defendant admitted that she did not notify plaintiff when her income exceeded the threshold set in the judgment of divorce, explaining that she forgot due to ongoing litigation and did not revisit the judgment's requirements. She maintained that her income had not increased significantly due to rising business expenses, and that any increases in company revenue had not translated into higher personal income. Defendant also described her charitable giving, retirement contributions, and the structure of her business and personal finances, emphasizing that she did not believe her spousal support should be reduced based solely on fluctuations in her reported income.

Plaintiff testified regarding his employment, income, and financial circumstances since the divorce. He stated that he has been employed as Vice President in charge of engineering and tooling at Metal Flow since 2014. Plaintiff asserted that his job responsibilities and compensation had not changed significantly since the parties' April 2016 divorce. He confirmed that his annual W-2 income for the years 2017 through 2022 ranged from approximately $307,000 to $325,000. Plaintiff additionally testified that he participated in a 401(k) plan with employee contributions but received no employer match. Plaintiff explained that he also owned two rental properties. He described the income and expenses associated with these properties, noting that the net rental income was modest and that he claimed depreciation on the properties as a deduction on his tax returns. Plaintiff asserted that he had no other significant sources of income or dividends, and that any investment income was reinvested, rather than taken as cash. He also agreed that he never

notified defendant that his income exceeded the 10% threshold above the amount stated in the judgment of divorce, as his income had not changed substantially since that time.

In June 2023, plaintiff filed a closing argument in support of the motion to terminate the USSO. Plaintiff stated that defendant admitted she never reported notice of an increase in her income by more than 10% in a calendar year, as required by the judgment of divorce. Plaintiff argued that defendant's actions and a lack of cooperation in discovery showed an intent to conceal her income. Plaintiff additionally argued that ample evidence showed an increase in defendant's annual income, suggesting that she no longer needed spousal support. Plaintiff pointed out that expert analysis of defendant's tax returns and business records showed her income had consistently exceeded the imputed $40,000, with significant additional benefits and capital gains. Defendant admitted to income of $99,547 in 2020 and $90,581 in 2021, and made substantial charitable contributions, which plaintiff contended was evidence of financial stability. On the other hand, plaintiff maintained that his income had remained stable since the divorce with no significant increase or new benefits.

Plaintiff argued that defendant's circumstances changed significantly since the original award, meaning that she was no longer entitled to spousal support. Plaintiff additionally contended that he was entitled to reimbursement for attorney fees related to defendant's failure to provide required financial information. He also requested that spousal support be retroactively modified to reflect defendant's actual income since 2018, arguing that her failure to report income increases justified requiring her to reimburse him for overpayment of spousal support.

Defendant filed a closing argument opposing the motion to terminate the USSO in July 2023. Defendant argued that the spousal support obligation did not end upon her remarriage and that plaintiff's claims about her financial improvement were unsupported. Additionally, defendant contended that Larson overstated her income by including gains from her separate estate, IRA rollovers, and business expenses. Defendant explained that her actual average K-1 distributions over four years were about $39,539, which aligned with what the court anticipated at the time the judgment of divorce was entered. She also noted that no evidence was presented to show that her marriage to Kaminski changed her financial status, pointing out that she elected to keep her finances separate to preserve her estate.

Defendant further argued that plaintiff's income increased since the divorce and that he also surpassed the 10% increase threshold, but never reported it. Comparatively, defendant argued that plaintiff's income remained much higher than hers: if only employment income was considered, plaintiff earned $329,882, while defendant earned $39,552. If all income and depreciation were considered, plaintiff earned $347,401, and defendant earned $71,498. Either way, defendant argued that plaintiff remained more than capable of paying spousal support.

Regarding the retroactive modification of spousal support, defendant briefly contended that her income fluctuated and averaged below the 10% threshold, and that plaintiff himself failed to report his own 10% increase in income, suggesting that retroactive modification was unwarranted. Finally, regarding attorney fees, defendant argued that plaintiff was not entitled to fees, noting that both parties incurred substantial fees as a result of plaintiff's motion to terminate the USSO.

In August 2023, the trial court issued an opinion modifying the USSO. The court found two changes justifying modification: (1) defendant's remarriage to a financially capable partner, and (2) defendant's successful business, both of which were acknowledged by defendant. The court found that these changes warranted modification of the USSO, rather than termination. The court additionally observed that the judgment of divorce required the parties to notify each other of any income increase of 10% or more, with failure exposing the non-reporting party to attorney fees and sanctions. The court found that defendant admitted she forgot to comply. The court noted that it considered this in deciding whether to modify support and impose sanctions.

Turning to the spousal support factors, the court found that several factors warranted modifying the USSO. Specifically, the court found that (1) both parties were working and financially stable; (2) defendant's remarriage and business success increased her financial flexibility; (3) plaintiff could still afford to pay spousal support, but defendant's changed circumstances justified a reduction; and (4) defendant's prior standard of living and the effect of cohabitation supported modification, rather than termination. The court additionally explained that, while remarriage is a significant change, the original judgment of divorce did not provide for automatic termination of the USSO upon defendant's remarriage. The court found that a significant income disparity remained between the parties, meaning that complete termination of the USSO would not be equitable.

Regarding plaintiff's request for retroactive modification of support and attorney fees, the trial court found that defendant's failure to report her income increase was unintentional. Rather than order attorney fees or a retroactive modification of support, the court decided the most efficient resolution was to reduce support and incorporate all of the issues into one revised USSO. Accordingly, the court reduced plaintiff's spousal support obligation to $3,000 per month, with an additional $500 reduction (to $2,500 per month) to account for plaintiff's request for retroactive modification of spousal support and attorney fees. In September 2023, the trial court entered a revised USSO reflecting these changes.

Plaintiff thereafter moved for reconsideration of the revised USSO. Relevant to this appeal, plaintiff argued that the revised USSO was made retroactive to August 30, 2022. Plaintiff explained that this retroactive application resulted in plaintiff overpaying spousal support by $26,000 through September 30, 2023. The court's opinion did not address how this overpayment should be repaid to plaintiff. Plaintiff maintained that this issue had not yet been decided, making reconsideration appropriate under MCR 2.119(F).

Defendant also moved for reconsideration of the revised USSO. Defendant argued that the spousal support guidelines used by the court assumed taxability, but if the support were not taxable, the recommended amount would have been higher than what the court ordered. She requested that the court reconsider the tax treatment of the support payments. She also contended that the court incorrectly compared her income to plaintiff's by including her dividend income, but only considering defendant's income, not his dividend or rental income. Defendant likewise argued that the court confused her business's gross revenue with net income, leading to an inaccurate assessment of her financial situation. Defendant continued that, after taxes, the net spousal support she received was insufficient to meet her needs, and the additional $500 monthly reduction was also taxed, further reducing her net benefit. Regarding the $500 reduction to account for plaintiff's attorney fees, defendant contended that the total offset over the support period exceeded the actual

attorney fees claimed. She stated that it was inappropriate to award all of plaintiff's attorney fees, especially those incurred for the hearing, which would have occurred regardless of her actions.

Regarding retroactivity, defendant noted that both parties failed to report increases in income as required by the judgment, and stated that she should not be penalized with further retroactive support adjustments. Defendant also raised concerns about the practical and tax implications of repaying retroactive support, suggesting that a lump sum repayment would require her to liquidate assets and incur additional taxes, while a payment schedule would strain her finances. Defendant thus asked the court to reconsider the foregoing issues.

In October 2023, the trial court entered an order denying both motions for summary disposition. Regarding plaintiff's motion, the court clarified that the $26,000 overpayment of spousal support would be credited over the remaining 54 months of the obligation, resulting in a monthly credit of $481.48. The court rounded this up to $500 per month to also account for attorney fees associated with discovery, as provided in the judgment of divorce. The court noted that ongoing litigation over spousal support was likely, but that it could only act on the information currently available to it.

Regarding defendant's motion, the court stated that it considered taxability and did not modify the taxability provision in the USSO. The court acknowledged an error in stating defendant's income as $200,000, but found that both parties have complex finances that would require forensic accounting to fully analyze. The court reiterated that the $500 monthly credit to plaintiff included a portion for attorney fees. The court concluded that neither party provided convincing evidence of a palpable error that would require modifying its previous opinion and order.

## II. ANALYSIS

Plaintiff argues that the trial court abused its discretion by modifying his spousal support obligation, rather than terminating it. He further contends that the court abused its discretion by failing to retroactively modify spousal support and by failing to award him an appropriate amount of attorney fees. On cross-appeal, defendant argues that the court erred by finding that a change in circumstances existed to justify the modification of spousal support. She additionally contends that the court abused its discretion by failing to make adequate factual findings regarding the parties' income for spousal support purposes.

## A. STANDARDS OF REVIEW

A trial court's factual findings relating to the modification of spousal support are reviewed for clear error. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990); *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). "A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed." *Beason*, 435 Mich at 805. If the trial court's findings are not clearly erroneous, this Court then reviews the trial court's ruling regarding spousal support for an abuse of discretion. *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). An abuse of discretion occurs when the trial court's ruling falls outside the range of reasonable and principled outcomes. *Id*. A trial

-7-

court's spousal support ruling must be affirmed unless this Court determines that it was inequitable. *Loutts*, 298 Mich App at 26.

We review the trial court's decision to award attorney fees for an abuse of discretion. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 451; 844 NW2d 727 (2013). Questions of law related to the award of attorney fees are reviewed de novo, while questions of fact are reviewed for clear error. *Id*. Additionally, to the extent that this case concerns questions of statutory and contractual interpretation, we likewise review such issues de novo. *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503 (2007).

## B. SPOUSAL SUPPORT

MCL 552.28 authorizes the modification of spousal support awards. It states, in relevant part:

> On petition of either party . . . the court may revise and alter the judgment, respecting the amount or payment of the alimony . . . and may make any judgment respecting any of the matters that the court might have made in the original action.

A spousal support award is subject to modification only after a showing of changed circumstances. *Lemmen v Lemmen*, 481 Mich 164, 166; 749 NW2d 255 (2008). "If the court finds that a party has established a change in circumstances, it must then make factual findings from which to conclude whether the alimony should be modified and, if so, by what amount." *Luckow v Luckow*, 291 Mich App 417, 424; 805 NW2d 453 (2011) (quotation marks and citation omitted).

After the moving party has established a change in circumstances sufficient to warrant modifying a spousal support award, the court must determine whether and how to modify the award using the following factors:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Berger v Berger*, 277 Mich App 700, 726-727; 747 NW2d 336 (2008) (quotation marks and citation omitted).]

The trial court must then "make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003) (citation omitted).

## 1. CHANGE IN CIRCUMSTANCES

As an initial matter, defendant argues on cross-appeal that the trial court improperly found that a change in circumstances warranted modification of spousal support because her increased

earnings were anticipated and accounted for in the original judgment of divorce. In the judgment of divorce, the trial court imputed $40,000 in income to defendant for spousal support purposes, based on her education and work history. The trial court went on to state:

> As pointed out by the plaintiff, the defendant's annualized income at her last place of business was $72,000.00 per year. She will have some work to do to find similar employment and get any necessary certification, but she will be able to command that level of income in the future if she appropriately applies herself.

The court also stated:

> The plaintiff is likely to be making in excess of $300,000 for the foreseeable future. As pointed out by the plaintiff, defendant likely has the ability to make $72,000 or more per year. However, due to her absence from the work force for several years, it is unlikely that she would make that immediately or in the near future. Even if she were to make $72,000.00, this factor, when considered with others as previously noted, supports a property award favoring defendant. This could also be achieved through a generous spousal support award.

"By definition, changed circumstances cannot involve facts and circumstances that existed at the time the court originally entered a judgment." *Laffin v Laffin*, 280 Mich App 513, 519; 760 NW2d 738 (2008). Instead, "[a]ny modification of spousal support must be based on new facts or changed circumstances arising after the judgment of divorce, and requires an evaluation of the circumstances as they exist at the time modification is sought." *Id*. Defendant is correct that her increase in income was anticipated at the time of the divorce. The trial court expressly noted that defendant's likely future income would be between her own estimate of $35,000 after a couple of years, and plaintiff's estimate of $72,000, as annualized from her employment history. The trial court estimated that defendant's take-home income at the time that plaintiff moved to terminate the USSO was approximately $74,078. Thus, an increase in the defendant's income—especially given that her estimated income fell so close to the range anticipated by the court—does not, by itself, constitute an unanticipated change in circumstances justifying modification of spousal support.

However, it bears noting that the trial court also determined that defendant's remarriage constituted a change in circumstances warranting review of spousal support, given that she "remarried to a person capable of earning income to assist in her support and desire to maintain a certain lifestyle." Defendant's remarriage was not anticipated at the time of the divorce and clearly constituted a change in circumstances. See MCL 552.13(2) ("An award of alimony may be terminated by the court as of the date the party receiving alimony remarries unless a contrary agreement is specifically stated in the judgment of divorce."); *Elahham v Al-Jabban*, 319 Mich App 112, 134; 899 NW2d 768 (2017) (finding that it was equitable to terminate spousal support one year after the recipient remarried, after reducing spousal support by 50% immediately following the remarriage). Here, the court clarified that, while remarriage can be a basis for modifying spousal support, it is not an automatic ground for termination unless the parties had agreed to such a term in their judgment of divorce, which the parties had not in this case. Ultimately, even if the trial court erred by finding that defendant's increased income was a change in circumstances, the error was harmless, since plaintiff's remarriage constituted a change in

circumstances warranting review of the spousal support order. See *In re Moriconi*, 337 Mich App 515, 522; 977 NW2d 583 (2021) ("An error is harmless if it did not affect the outcome of the proceeding.").

## 2. THE COURT'S REVISED USSO

Regarding the trial court's decision to revise the USSO, plaintiff contends on direct appeal that the court did not properly consider the "vast income, significant assets, or any other income-generating resources" that defendant accrued since the divorce. He further argues that the court "had conflicting findings regarding [plaintiff]'s ability to pay spousal support and his prior standard of living."

The trial court reduced plaintiff's spousal support obligation to $3,000 per month.[2] This Court's first task on appeal is to determine whether any of the trial court's factual findings were clearly erroneous. *Loutts*, 298 Mich App at 26. "If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Id.*

In its opinion modifying the USSO, the trial court discussed defendant's business activities, specifically her role as part-owner of RFG, which she operates with Kaminski. The court noted that RFG's business revenue for 2022 was $273,909.72, and defendant's distribution was $74,078, with a three-year average income of $77,078. The court also considered testimony estimating defendant's future business revenue and acknowledged the difficulty in pinning down her precise income due to the nature of the LLC and the marital/business partnership she shares with Kaminski. The court further referenced Larson's testimony, noting that he calculated defendant's income at well over $100,000 per year, although that figure included non-cash items like stock and retirement fund transactions.

Regarding assets, the trial court reviewed the property division from the divorce, noting that both parties left the marriage with significant assets and have since invested in real estate and stocks. The court observed that both parties used common tax benefits from real estate investments and that neither party appeared to be struggling financially. Finally, regarding other income-generating resources, the court considered defendant's ability to generate income through her business and investments, as well as Kaminski's earning capacity and their joint financial activities. The court noted the purchase of expensive vehicles as business expenses and the flexibility in allocating income and expenses within the LLC. The court also discussed the impact of defendant's remarriage and cohabitation on her financial status, including the mutual support available in her new marriage. Thus, contrary to plaintiff's argument, the trial court thoroughly explored defendant's income, assets, and other income-generating resources as part of its analysis of whether to modify or terminate spousal support.

---

[2] For purposes of this analysis, we do not address the additional deduction the court imposed in the USSO as compensation for plaintiff's request for retroactive modification of spousal support and attorney fees. Those portions of the revised USSO are instead addressed in subsections (II)(B)(3) and (II)(C) below.

-10-

In its analysis of the spousal support factors, the court additionally gave a thorough explanation of its decision to modify spousal support, rather than terminate it, stating that its decision was largely based on balancing the equities between the parties. The court found that, despite the positive changes in defendant's financial status, there remained a "significant disparity between the income of plaintiff and defendant, even if we treat the gross business income as arguably hers." The court thus reasoned that termination of the USSO would not be equitable. The court also recognized that the original purpose of spousal support was to balance the parties' incomes and assist defendant in becoming self-sufficient. The court therefore found that a significant modification, rather than termination, would best serve those goals.

"Spousal support is to be based on what is just and reasonable under the circumstances of the case." See *Korth*, 256 Mich App at 289. Here, the trial court noted that "[d]uring the marriage, the parties enjoyed an upper-class lifestyle that would be the envy of most people." Both parties continued to enjoy a comfortable standard of living following the divorce, but plaintiff's income continued to far exceed defendant's income. Thus, the determination here was not based solely on whether defendant continued to *need* spousal support, which plaintiff suggests should be the focal point of the analysis, but rather, what was reasonable and necessary to balance the equities, based on the specific circumstances presented. See *Berger*, 277 Mich App at 726 ("The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case."). As discussed, the trial court thoroughly analyzed the relevant spousal support factors. The court's findings of fact were not clearly erroneous, and its decision to modify spousal support, rather than terminate it, was not an abuse of discretion.

Plaintiff also briefly argues that the trial court failed to consider that Kaminski may be benefiting from plaintiff's payment of spousal support. This argument is speculative, and rather than being legally significant, appears largely rooted in the bad blood between the parties. Rather than directing this Court to portions of the record supporting the contention that defendant is using spousal support money to Kaminski's benefit, or explaining why that should have impacted the trial court's ruling, plaintiff merely states that, "[n]ot only is [defendant] now benefitting from her infidelity, but so is the man with whom she was likely disloyal." We thus consider the argument abandoned. See *Berger*, 277 Mich App at 712 ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

Defendant additionally argues on cross-appeal that the court clearly erred by failing to make factual findings regarding the parties' income for spousal support purposes. As already discussed, the court made specific findings regarding defendant's reported business revenue from RFG, as well as her take-home distribution, which totaled $273,909.72 and $77,078 in 2022, respectively. The court also considered Larson's expert testimony that defendant's income was more than $100,000 per year, but discounted some of his calculations as including non-cash income from stocks and retirement fund transactions. The court went on to find that plaintiff's income had remained stable since the divorce, with his 2022 gross income at $330,625 and taxable income at $314,409.12, which was the same as in 2017. The court admitted that it was challenging to attribute income from RFG, which is an LLC, especially given the ability of defendant and Kaminski to allocate income and expenses and the use of business funds for personal expenses. Nevertheless, the court endeavored to properly calculate defendant's income based on the record available. The court also considered the parties' investments, real estate holdings, and the income

generated from those assets. On this record, the trial court conducted a thorough and fact-specific analysis of both parties' incomes, the sources and reliability of those incomes, and the impact of business and marital arrangements on the determination of spousal support. Defendant's argument to the contrary lacks merit.

### 3. RETROACTIVE MODIFICATION OF SPOUSAL SUPPORT

Plaintiff next argues that the trial court abused its discretion by failing to retroactively modify spousal support.

In its opinion denying the parties' motions for reconsideration, the trial court explained that a credit of $481.48 per month for the ensuing 54 months constituted plaintiff's reimbursement for overpayment of spousal support dating from the time he filed his motion to terminate the USSO in August 2022. Specifically, the court stated:

> The Plaintiff believes that the opinion does not address the overpayment of spousal support created by the Court's opinion. Both parties seem to agree that the Plaintiff overpaid by $26,000.00. A significant consideration for the Court was how to amortize that overpayment over the remaining term of the obligation by giving the Plaintiff credit against a $3,000.00 obligation. The obligation terminates by its terms on February 28, 2028. The Court calculated that 4 1/2 years remained on the obligation. That equates to 54 months remaining. $26,000.00 divided by 54 equals $481.48. That amount would be the monthly credit Plaintiff is entitled to for the remainder of the obligation based solely on the overpayment.

Plaintiff contends that the trial court abused its discretion by only retroactively modifying spousal support to August 30, 2022, the date on which he filed the motion to terminate the USSO. He claims that he is instead entitled to retroactive modification of spousal support dating back to January 1, 2018, based on the language of MCL 552.603b and defendant's failure to comply with the 10% provision set out in the judgment of divorce.

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495; 948 NW2d 452 (2019) (quotation marks and citation omitted). "If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute." *Id*. Under MCL 552.603(2), "[r]etroactive modification of a support payment due under a support order is permissible with respect to a period during which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support." The plain language of MCL 552.603(2) makes clear that retroactive modification of spousal support is permissible only from the date that notice of a petition to amend support is given. In other words, the trial court correctly determined that plaintiff was only entitled to retroactive modification of spousal support from the date that he filed his motion to terminate the USSO, i.e., August 30, 2022. See also *Cipriano v Cipriano*, 289 Mich App 361, 374; 808 NW2d 230 (2010) ("[T]he clear language of MCL 552.603(2) also allows for the retroactive modification of support orders from the date of notice of a petition for modification of support.").

However, plaintiff contends that MCL 552.603b provides an avenue through which he can obtain retroactive modification of spousal support from January 1, 2018 forward. MCL 552.603b states:

> If an individual who is required by the court to report his or her income to the court or the office of the friend of the court knowingly and intentionally fails to report, refuses to report, or knowingly misrepresents that income, after notice and an opportunity for a hearing, the court may retroactively correct the amount of support.

Plaintiff argues that, because defendant violated the 10% provision in the judgment of divorce by failing to report that her income increased by more than 10%, the court was required to grant his request to retroactively modify spousal support from 2018 onward. First, the 10% provision in the judgment of divorce, which will be examined in more detail below, only requires that an increase in income be reported to the other party, not to the court, indicating that MCL 552.603b does not apply.

Second, the plain language of the statute requires that the offending party "knowingly and intentionally fails to report, refuses to report, or knowingly misrepresents that income[.]" Here, the record indicates that defendant's failure to report her income was not knowing or intentional. Additionally, even if we concluded that MCL 552.603b applies, plaintiff overlooks that the plain language of MCL 552.603b merely gives the court *discretion* to retroactively correct support. "The use of the word 'shall' constitutes clear language designating a mandatory course of conduct; whereas, the term 'may' presupposes discretion and does not mandate an action." *In re Weber Estate*, 257 Mich App 558, 562; 669 NW2d 288 (2003) (citations omitted). The word "may" in MCL 552.603b therefore indicates that the trial court had the option to retroactively correct the amount of support in general. Importantly, however, the plain language of MCL 552.603b does not state that the court has authority—discretionary or otherwise—to retroactively correct support to the date the alleged misrepresentation occurred. Plaintiff's argument thus lacks merit.

Plaintiff's argument that the terms of the judgment of divorce entitle him to a greater retroactive modification of spousal support fails for similar reasons. The 10% provision in the judgment of divorce states:

> The parties shall provide notice to the opposing party of any increase in income of l 0% or more in any calendar year. Failure to provide this information to the other party will expose that party to the payment of attorney fees and expenses generated by the opposing party's effort to gather the withheld information.

A judgment of divorce is a contract and is treated as such by the courts. *Andrusz v Andrusz*, 320 Mich App 445, 453; 904 NW2d 636 (2017). "This Court's goal in interpreting a contract is always to ascertain and give effect to the intent of the parties as reflected in the plain language of the contract." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271-272; 1 NW3d 308 (2022). "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Id*. at 272 (quotation marks and citation omitted).

"Unambiguous contracts must simply be enforced as they are written, absent a handful of extremely unusual circumstances like fraud, duress, or illegality." *Andrusz*, 320 Mich App at 453.

Plaintiff maintains that the 10% provision is plainly written and that the trial court was obligated to apply it to defendant's failure to timely notify him of her increased earnings once they exceeded 10% of her earnings the prior year. Plaintiff also argues that defendant's failure to provide such notice automatically obligated her to pay plaintiff's attorneys fees and expenses relative to the discovery of the withheld information. We find it is not so cut and dry. First, as written, the provision at issue uses the term "exposed", which is not defined in the judgment of divorce. If the terms [of a contract] are ambiguous or undefined, this Court may use dictionary definitions to ascertain their plain and ordinary meaning." *IGCFCO III, LLC v One Way Loans LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366535); slip op at 6. The term "exposed" is defined as "open to view" or "not shielded or protected[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). The term "exposed" is not a mandate of certainty. Rather, it signals a likelihood or probability. Thus, plaintiff's insistence of an automatic entitlement to attorney fees and expenses related to discovery of the 10% increase in income is misplaced. The judgment does not mandate it.

Second, the provision contains no express language authorizing the court to retroactively modify spousal support upon noncompliance by either party with the 10% provision. Indeed, in its written opinion and order, the trial court acknowledged: "The Judgment only expressly calls for sanctions in the form of attorney fees and costs necessitated by the need to pursue discovery for the withheld information, not a retroactive modification of spousal support." Here, the trial court recognized that it would defy logic if it were to "sanction a violation of the notice requirement without having an impact on the underlying spousal support award." It was based on this interpretation that the trial court reduced plaintiff's spousal support obligation, deviating from the step-down scale as contained in the judgment of divorce. Accordingly, we find that the trial court did not abuse its discretion by retroactively modifying spousal support from August 2022 onward.

## C. ATTORNEY FEES

Finally, plaintiff argues that the trial court abused its discretion by failing to properly consider his request for attorney fees.

Along with his request to terminate the USSO, plaintiff sought an award of $28,933 in attorney fees for costs associated with obtaining defendant's income information. Defendant opposed the request, arguing that the request for attorney fees should be denied. As earlier described, the trial court reduced plaintiff's overall spousal support obligation to $3,000. It then reduced that obligation by an additional $500, to account for plaintiff's request for retroactive modification of spousal support and attorney fees. In its opinion on the parties' motions for reconsideration, the trial court clarified that $481.48 of that $500 award represented the retroactive modification of spousal support, meaning that the remaining $18.52 was meant to cover plaintiff's request for attorney fees. It further explained:

Both parties seem to think that the $500.00 reduction is related solely to attorney fees. That is not the Court's intent. The Court recognizes that the attorney fee provision applies to fees associated with discovery. The Court rounded up to

-14-

$500.00 per month to account for attorney fees associated with discovery as provided in the Judgment of Divorce. Consideration of the overpayment was the primary focus of the Court's ultimate determination.

The trial court did not address attorney fees in any greater detail, nor did it make factual findings in support of its decision.

Michigan follows the "American Rule," which states that "attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Here, attorney fees were permitted by contract, per the 10% provision in the judgment of divorce. The party requesting fees bears the burden to show that the fees were incurred and that they were reasonable. *Id*. at 165-166. "When requested attorney fees are contested," as they were in this matter, "it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services." The trial court is not permitted to "award attorney fees . . . solely on the basis of what it perceives to be fair or on equitable principles." *Id*. at 166. The trial court erred by failing to conduct a hearing or make finding of facts regarding the reasonableness of plaintiff's request for attorney fees. Thus, the record is inadequate to allow for meaningful review of the issue. Accordingly, we vacate the portion of the revised USSO pertaining to attorney fees, and direct the court to conduct an evidentiary hearing and make appropriate findings of fact on remand.

## III. CONCLUSION

The trial court did not abuse its discretion by revising the USSO, rather than terminating it. The court made appropriate findings of fact regarding the parties' assets and income, and thoroughly supported its decision to reduce plaintiff's spousal support obligation to $3,000. It likewise did not abuse its discretion by retroactively modifying spousal support from August 30, 2022. However, the court abused its discretion by awarding attorney fees without conducting an evidentiary hearing or making any factual findings to support the award.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado